Venkat Balasubramani
(State Bar No. 189192)
BALASUBRAMANI LAW
8426 40th Ave. SW
Seattle, Washington 98136
(206) 529-4827 phone
(206) 260-3966 fax
venkat@balasubramani.com
Attorney for Carolyn Pestano

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY II, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br> vs.<br><br>CAROLYN PESTANO, an individual,<br><br>    Defendant. | **Case No. C07-05463 WHA**<br><br>**CAROLYN PESTANO'S OPPOSITION TO AT&T'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>**(Civil L.R. 7-11)** |

## I. INTRODUCTION

AT&T Mobility II, LLC ("**AT&T**") files an administrative Motion to Seal the following documents filed in support of AT&T's pending dispositive motions: (1) the dealer agreement in place between it and Viva Wireless, Inc. ("**Viva**") (the "**Dealer Agreement**"), (2) the agreement pursuant to which AT&T advanced certain funds to Viva (the "**APA Agreement**"), and (3) a release pursuant to which AT&T's predecessor restructured residual payments due to Viva (the "**SMF Release**"). AT&T does not make any particularized showing that the material it seeks to have sealed constitutes trade secrets or is otherwise sealable. Nor does AT&T make any effort to narrowly tailor its request. AT&T offers conclusory justifications for why the documents should be sealed in their entirety, rather than redacted. AT&T's request is belied by the information freely available to the public and by AT&T's own previous filings. AT&T's request should be denied.

## II.    DISCUSSION

In determining whether documents are appropriately sealed, courts distinguish between "discovery documents," and documents "that influence or underpin the judicial decision." The latter category of documents enjoys a presumptive right of public access, regardless of whether the parties stipulate to their confidential nature. <u>Baxter Int'l, Inc. v. Abbott Labs.</u>, 297 F.3d 544, 545 (7th Cir. 2002). The party seeking secrecy with respect to non-discovery documents must "make . . . a particularized showing that disclosure will cause a clearly defined and serious injury . . . ." <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994). Local Rule 79-5 tracks these principles – and requires a request to seal to: (1) be narrowly tailored, and (2) demonstrate that the material sought to be sealed is a trade secret, privileged, or otherwise entitled to protection under the law. *See* Civil L.R. 79-5; *see also* commentary to Civil L.R. 79-5 (referencing "*minimum redactions* necessary to protect sealable information") (emphasis added).

Here there is no dispute that the documents in question are non-discovery documents, given that they are attached to AT&T potentially dispositive motions. Accordingly, they enjoy a presumptive right of public access. In order to file them under seal, AT&T must make a particularized showing that specific material is sealable and the harm that could flow from disclosure.

## A.    AT&T Does not Undertake a Particularized Showing

AT&T does not attempt a particularized showing with respect to specific portions of any of the documents. It submits the declaration of its Senior Litigation Counsel (the Hennessy Declaration), who generally avers that disclosure of any part of the Dealer Agreement would be harmful because the entire agreement constitutes valuable, proprietary information. The Hennessy Declaration further argues that disclosure of the Dealer Agreement would be harmful because it would provide a "roadmap" of the relationship to AT&T's competitors. But the Hennessy Declaration fails to identify any particular provisions of the Dealer Agreement which constitute

"proprietary information." Surely the miscellaneous provisions – such as the choice of law or the arbitration provisions – do not constitute proprietary information. Nor do the general provisions which allow AT&T to withhold a reserve (subject to an obligation to account to the dealer) – these types of terms are likely a part of every dealer agreement. The same is true of the other two documents. The Hennessy Declaration fails to articulate specifically what provisions of the APA Agreement or the SMF Release should be treated as confidential and why their disclosure would harm AT&T. This alone is a basis for denial of AT&T's request. *See* Civil L.R. 79-5.

**B.    AT&T Does not Demonstrate What Harm Could Flow From Disclosure**

AT&T's purported justifications are so general that they should be viewed with skepticism. Pestano, who was the principal of an AT&T dealer, testifies that certain specific provisions of these agreements, such as compensation figures, were in practice treated as confidential. However, there is no basis for treating the boilerplate terms, including dispute resolution provisions, as confidential. (*See* Pestano Decl., ¶ 2.) An examination of each of the documents bears out this position.

*1.    The Dealer Agreement.*

AT&T's argument that the Dealer Agreement should not be disclosed because it provides a "roadmap" of the relationship between AT&T and the dealer is belied by the evidence. First, AT&T filed an un-redacted version of a previously existing dealer agreement which has terms substantially similar to the Dealer Agreement. The previous dealer agreement provides as much of a "roadmap" as the Dealer Agreement. (*See* Pestano Decl., ¶ 2.) Second, one unrelated entity who is a party to a *current* dealer agreement with AT&T has filed this agreement with the Securities and Exchange Commission while redacting only portions of the agreement. The document is freely available (in redacted form) online. (*See* Balasubramani Decl., Ex. B.) That agreement is marked (as is the Dealer Agreement) as "Cingular Wireless Proprietary & Confidential." The fact that such an agreement was publicly filed shows which portions of the dealer agreement were actually viewed as confidential by

AT&T and dealers (and by the SEC). The redacted version also shows how the Dealer Agreement should be properly redacted. A comparison of the two documents is telling.

  2.  *The APA Agreement.*

  With respect to the APA Agreement, the Hennessy Declaration avers that because the APA Agreement was a "very unusual exception" made for Viva, disclosure would harm AT&T because other dealers would "demand similar arrangements from AT&T . . . ." There are several problems with this argument. First, Pestano's counterclaims, which were filed over 60 days ago, refer extensively to the terms of the APA Agreement and quote from it. Any purported harm from disclosure of the key terms would have already occurred. Second, and even more important, AT&T itself freely disclosed (*see* Miguel Decl. (Dkt. 22), p. 32-35) the Personal Guaranty, which *was an attachment* to, and an integral part of, the APA Agreement. AT&T's argument that the disclosure of the APA Agreement would harm its interests is inconsistent with its own conduct. The Personal Guaranty sets forth the key provisions of the APA Agreement – that AT&T advanced to Viva $250,000 pursuant to that agreement. The remaining provisions of the APA Agreement are largely boilerplate and cannot be trade secrets. Having disclosed its key provisions, AT&T cannot now argue that the APA Agreement should be sealed entirely.

  3.  *The SMF Release.*

  AT&T's arguments as to the SMF Release are similarly unavailing. The Hennessy Declaration avers that since AT&T entered into releases with various other dealers, all having "different terms," disclosure of the SMF Release could cause "discord" among the various dealers. Conceivably there are a few critical terms of the SMF Release that could vary from dealer to dealer – the amount of compensation owed and the timing of payment. The bulk of the other terms of the SMF Release are general/boilerplate terms. With respect to the amount of compensation and the timing of payment, those have already been disclosed, and are part of the record in this case. These,

along with the references in the SMF Release to an earlier dealer agreement, and the dispute

resolution provisions are all key terms that will likely be central to the Court's resolution of AT&T's

Motions. Accordingly, they should be a part of the public record.

**C.    AT&T Failed to Explore any Lesser Restrictive Alternatives**

AT&T argues that it filed a blanket request because it would have been unworkable to come

to an agreement regarding particular portions of the documents since AT&T could not anticipate what

sections Pestano would refer to in opposition. (*See* Kohut Decl.) This is an untenable reason to file a

blanket request, and was caused by AT&T's failure to fully confer with counsel for Pestano. Indeed,

AT&T should have approached counsel for Pestano and tried to come to an agreement on the key

provisions which should be redacted from the agreements. Another alternative would have been to

confer with Pestano's counsel regarding the dispositive portions of the agreement and stipulate as to

their authenticity (thus obviating the need to attach the agreements). Pestano's counsel suggested

both of these options. (*See* Balasubramani Decl., ¶¶ 2 & 6.) Either of these alternatives would have

minimized the material sought to be sealed, and minimized the burden on the Court and the parties.

### III.    CONCLUSION

AT&T's blanket request to seal should be denied. The documents contain discrete items of

sealable information, at best, which can easily be redacted. AT&T's purported justifications as to

why the documents should be sealed entirely are belied by its own conduct and the fact that at least

one of the documents is publicly available (in redacted form). Courts should not seal dispositive

provisions of documents lightly, and this instance AT&T's justifications fall well short of what is

necessary to obtain a blanket sealing order.

DATED this 26th day of January, 2008.

Venkat Balasubramani, Bar No. 189192
for CAROLYN PESTANO (Defendant)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 26th day of January, 2008, the undersigned

caused the foregoing **OPPOSITION TO AT&T'S MOTION TO FILE DOCUMENTS UNDER**

**SEAL** to be filed via the Court's electronic filing (cm/ecf) system, which will provide notice to

counsel for Plaintiff:

> Ronald J. Kohut <ron@kohutlaw.com>
> Sarah Kohut <sarah@kohutlaw.com>
> Kohut & Kohut LLP
> 3554 Round Barn Blvd., Suite 204
> Santa Rosa, CA 95403

I declare under penalty of perjury under the laws of the United States and the State of California that

the foregoing is true and correct and that this declaration was executed on January 26, 2008, at

Seattle, Washington.

Venkat Balasubramani, Cal. Bar No. 189192