Venkat Balasubramani
(State Bar No. 189192)
BALASUBRAMANI LAW
8426 40th Ave. SW
Seattle, Washington 98136
(206) 529-4827 phone
(206) 260-3966 fax
venkat@balasubramani.com
Attorney for Carolyn Pestano

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY II, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br>vs.<br><br>CAROLYN PESTANO, an individual,<br><br>    Defendant. | Case No. C07-05463 WHA<br><br>**DECLARATION OF CAROLYN PESTANO IN OPPOSITION TO AT&T'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL** |

I, Carolyn Pestano, make this declaration based on my personal knowledge as to the matters set forth herein. I am over the age of 18 and the Defendant/counterclaimant in this action.

1. I have experience as CEO of a dealership (Viva Wireless, Inc.) for approximately 6 years, and in this capacity dealt with AT&T Mobility II, LLC (AT&T) and its various predecessors. Viva was a party to the various agreements which are the subject of AT&T's Motion to Seal.

2. AT&T argues in its request to seal various documents that the "Cingular Wireless Exclusive Dealer Agreement" (effective January 1, 2006), the "Advance Payment Agreement" (entered October 10, 2006), and the "2/1/06 SMF Release" should all be treated as confidential in their entirety. Based on my experience as a dealer this is incorrect. At best, portions of the agreements should be treated as confidential.

**Dealer Agreement**

3. All of the provisions of the Dealer Agreement were not considered confidential by me (or Viva) or by other dealers. What was typically treated as confidential by AT&T and its dealers were specific compensation terms and bonus structures. Boilerplate terms such as choice of law and dispute resolution provisions were not viewed as confidential or treated as such.

4. AT&T's claim that the agreement would provide a "roadmap" to the relationship and allow competitors to poach dealers is similarly incorrect. The "roadmap" to a wireless carrier/dealer relationship is generally known and would not vary significantly among various carriers. For example, Viva's dealer terms did not vary significantly, notwithstanding the numerous corporate changes and mergers AT&T (and previously, Cingular) went through over the years. Moreover, AT&T freely disclosed previous versions of the dealer agreement which provide a roadmap to the existing relationship. (The older agreement, which AT&T does not request to file under seal, is substantially similar in its structure to later versions, including the Dealer Agreement.)

**Advance Payment Agreement**

5. With respect to the Advance Payment Agreement, the most important terms of the agreement that would be treated as confidential were: (1) the fact AT&T entered into the agreement and advanced funds to Viva and (2) the amount of the advance. As with any other agreement, the agreement contained miscellaneous and boilerplate terms that were not treated as trade secrets or proprietary information. When AT&T filed its underlying claims, it attached a personal guaranty (which was the basis of its underlying claims) to its complaint. It did not file a redacted version of this document. This personal guaranty was actually an exhibit to, and an integral part of, the Advance Payment Agreement. The personal guaranty disclosed the most

important and commercially sensitive terms of the Advance Payment Agreement (i.e., the fact of the advance and the amount advanced by AT&T).

6. To the extent the Advance Payment Agreement was viewed as confidential in its entirety (which it was not) the personal guaranty (which was attached as an exhibit to the Advance Payment Agreement) should have similarly been viewed as confidential. I did not view the two documents as separate. AT&T never mentioned anything about the agreements (the personal guaranty and the Advance Payment Agreement) being distinct in any oral discussions leading up to execution of the documents.

**The SMF Release**

7. With respect to the SMF Release, AT&T argues that disclosure of the documents would cause "discord" among other dealers since those dealers may have received different amounts under their versions of the SMF Releases. Based on my personal experience as a dealer, and talking to other dealers, this is incorrect.

8. The critical provision of the SMF Release is the total amount payable to the dealer and the timing of payments. Dealers (including Viva) would not really focus on the remaining terms (such as the release language, and the "miscellaneous" terms) in the context of comparing themselves to other dealers. If someone were to present me another dealer's SMF Release with the amounts payable redacted I would not be able to draw any conclusions regarding that document or the dealer in question.

I declare under the laws of perjury under the laws of the State of Washington and the State of California that the foregoing is true and correct to the best of my knowledge.

DATED this 26th day of January, 2008.

_____
Carolyn Pestano