1  Ronald J. Kohut, Esq. (SBN 66463)
   *ron@kohutlaw.com*
2  Sarah K. Kohut, Esq. (SBN 197655)
   *sarah@kohutlaw.com*
3  KOHUT & KOHUT LLP
   3554 Round Barn Blvd., Suite 204
4  Santa Rosa, California 95403
   Telephone: (707) 573-3100
5  Facsimile:  (707) 573-3101

6  Attorneys for Plaintiff and Cross-Defendant
   AT&T MOBILITY II, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY II, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN PESTANO, an individual,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV 07-05463 WHA<br><br>**NOTICE OF MOTION AND MOTION BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO**<br><br>Date: March 6, 2008<br>Time: 8:00 a.m.<br>Courtroom: 9 |

1

**CASE NO. CV 07-05463 WHA:  NOT. OF MOT. AND MOT. BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO**

TO DEFENDANT AND CROSS-COMPLAINANT CAROLYN PESTANO AND HER ATTORNEYS OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on March 6, 2008 at 8:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 9 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Alsup presiding, Plaintiff and Cross-Defendant AT&T Mobility II, LLC ("AT&T Mobility") will and does hereby move this Court for an Order compelling arbitration of the Counterclaims asserted by Carolyn Pestano ("Pestano").

This Motion will be made on the grounds that Pestano's Counterclaims arise from the "AT&T Wireless Exclusive Dealer Agreement" ("Original Dealer Agreement"), "Cingular Wireless Exclusive Dealer Agreement" ("Dealer Agreement"), "Settlement and Release Concerning Dealer's Pre-2/1/06 Total Subscriber Base" ("SMF Release"), and "Advanced Payment Agreement" ("APA") entered into by Viva Wireless Inc. ("Viva"). *See* Counterclaims at ¶¶ 7-12 and 18-19. In entering into the Original Dealer Agreement, Dealer Agreement, SMF Release and APA (collectively, "Agreements"), Viva expressly agreed to arbitrate claims arising under the Agreements, or any of them. *See* Declaration of Marc Miguel ¶¶ 3-6, Exhs. A-D. Pestano is Viva's alleged assignee. *See* Counterclaims FN 1. By bringing the Counterclaims in this Court, she has violated the Agreements. *Id.* The Federal Arbitration Act requires the enforcement of Viva's agreements to arbitrate its claims. 9 U.S.C. § 2.

This Motion shall be based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Marc Miguel and Sarah K. Kohut, the pleadings and records on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

1

**CASE NO. CV 07-05463 WHA: NOT. OF MOT. AND MOT. BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO**

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I. INTRODUCTION AND ISSUES TO BE DECIDED

Plaintiff and Cross-Defendant AT&T Mobility II, LLC, ("AT&T Mobility") respectfully requests this Court to compel arbitration of the Counterclaims asserted by Defendant and Cross-Complainant Carolyn Pestano ("Pestano").

The Counterclaims asserted by Pestano are claims purportedly assigned to her by Viva Wireless, Inc. ("Viva"). *See* Counterclaims FN 1 at p. 7, lns. 21-22. The Counterclaims arise from the "AT&T Wireless Exclusive Dealer Agreement" ("Original Dealer Agreement"), "Cingular Wireless Exclusive Dealer Agreement" ("Dealer Agreement"), "Settlement and Release Concerning Dealer's Pre-2/1/06 Total Subscriber Base" ("SMF Release"), and "Advanced Payment Agreement" entered into by Viva and AT&T Mobility's predecessor Cingular Wireless II, LLC. *See* Counterclaims at ¶¶ 7-12 and 18-19. In entering into the Original Dealer Agreement, Dealer Agreement, SMF Release and Advanced Payment Agreement (collectively, "Agreements"), Viva expressly agreed to arbitrate claims arising under the Agreements, or any of them. *See* Declaration of Marc Miguel, ¶¶ 3-6, Exh. A at 10.2.1; Exh. B at 11.3.1, Exh. C at Section 4f and Exh. D at Section 13. As Viva's alleged assignee, Pestano, by bringing the counterclaims in this Court, has violated the Agreements, which must be enforced under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. The FAA mandates that Pestano be compelled to arbitrate each of her Counterclaims.

## II. RELEVANT FACTS

**A.   Viva Agreed to Arbitrate Each of the Counterclaims Asserted by Pestano.**

Effective September 1, 2001, Viva and AT&T Wireless Services, Inc. ("AWS") entered into the Original Dealer Agreement. Miguel Decl. ¶ 3, Exh. A . Under the terms of the Original Dealer Agreement, Viva and AWS agreed that "all claims (including

---

[1] The following portions of this Memorandum of Points and Authorities are the subject of a concurrently filed motion to seal: page 3 at lines 5-11, 14-16, and 19-20; and page 6 at lines 9-12.

2

CASE NO. CV 07-05463 WHA: NOT. OF MOT. AND MOT. BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO

1  counterclaims and cross-claims) and disputes between Dealer [Viva] and Company [AWS]
2  must be resolved by submission to binding arbitration." Miguel Decl. ¶ 3, Exh. A at 10.2.1.
3      Effective January 1, 2006, Viva and AT&T Mobility's predecessor, Cingular Wireless
4  II, LLC ("Cingular Wireless II"), entered into the Dealer Agreement. *See* Miguel Decl. ¶ 4,
5  Exh. B; Counterclaims ¶ 11. The Dealer Agreement, at section 11.3.1, requires that: "all
6  claims (including counterclaims and cross-claims and also including claims based on tort or
7  other legal theories) and disputes between Dealer [Viva] and Company [AT&T Mobility II]
8  must be resolved by submission to binding arbitration . . ." Miguel Decl. ¶ 4, Exh. B at
9  11.3.1. The Dealer Agreement further specifies that any award of an arbitrator "may be
10 confirmed or enforced in any court having jurisdiction under the enforcement provisions of
11 the Federal Arbitration Act" ("FAA"). *Id.*
12     Effective February 1, 2006, Viva and AT&T Mobility's predecessor, Cingular
13 Wireless II, entered into the SMF Release. *See* Miguel Decl. ¶ 5, Exh. C; Counterclaims ¶
14 12. Section 4f of the SMF Release requires that "[a]ny disputes related to this 2/1/06 SMF
15 Release between the parties must be resolved under the dispute provisions of the Dealer
16 Agreement." Miguel Decl. ¶ 5, Exh. C at Section 4f.
17     In October 2006, Viva and AT&T Mobility's predecessor, Cingular Wireless II,
18 entered into the Advanced Payment Agreement ("APA"). *See* Miguel Decl. ¶ 6, Exh. D. The
19 APA provides at section 13, "[t]his APA shall be construed and interpreted in conjunction
20 with the Dealer Agreement and the 2/1/06 SMF Release." *Id.* Through this incorporation,
21 the APA became subject to the arbitration provision set forth at section 11.3.1 of the Dealer
22 Agreement. *See* Miguel Decl. ¶¶ 6 and 4, Exhs. D at ¶ 13 and B at 11.3.1.

**B.  Each Counterclaim Asserted by Pestano On Behalf of Viva is Arbitrable and Pestano and Viva Violated the Agreements by Bringing the Counterclaims in This Court.**

26     The Counterclaims filed by Pestano allege six claims: (1) "Breach of Contract (SMF
27 Release)"; (2) "Breach of Contract (Original Dealer Agreement)"; (3) "Breach of Contract
28 (Dealer Agreement)"; (4) "Breach of Duty of Good Faith and Fair Dealing" (Original Dealer

3

CASE NO. CV 07-05463 WHA: NOT. OF MOT. AND MOT. BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO

Agreement and Dealer Agreement); (5) "Negligent Misrepresentation" (APA); and (6) "Unfair Competition (§ 17200)" (Original Dealer Agreement and Dealer Agreement). *See* Counterclaims ¶¶ 29-67. Each one of these claims arises from the Original Dealer Agreement, Dealer Agreement, SMF Release, and/or APA. Accordingly, each one of these claims is arbitrable. *See* Miguel Decl. ¶¶ 3-6, Exh. A at 10.2.1; Exh. B at 11.3.1, Exh. C at Section 4f and Exh. D at Section 13.

By bringing the arbitrable Counterclaims before this Court, Pestano violated the Original Dealer Agreement, Dealer Agreement, SMF Release, and the APA. *Id.*

AT&T Mobility's counsel met and conferred with Pestano's counsel and demanded that Pestano arbitrate her counterclaims (and even offered to allow Pestano to arbitrate the claims arising from the Guaranty) but Pestano refused. *See* Declaration of Sarah K. Kohut ("S. Kohut Decl."), ¶ 3.

**C.   Claims Arising from the Guaranty Are Not Arbitrable.**

To induce Cingular Wireless II into entering the APA, on October 3, 2006, Pestano executed the Guaranty. *See* Miguel Decl. ¶ 6, Exh. D at Exh. B. The Guaranty does not contain an arbitration provision. *Id.* Further, the Guaranty is a stand alone agreement – it does not incorporate the Original Dealer Agreement, Dealer Agreement, SMF Release, and/or APA (collectively, "Agreements"). *Id.*

### III.   ARGUMENT
### THE FEDERAL ARBITRATION ACT REQUIRES ENFORCEMENT OF VIVA'S AGREEMENT TO ARBITRATE.

The FAA requires this Court to enforce the arbitration provisions contained in the Original Dealer Agreement and Dealer Agreement. 9 U.S.C. § 2.

The FAA applies because (1) the Dealer Agreement specifies that the arbitration provision is governed by the FAA (*see* Miguel Decl. ¶ 4, Exh. B at 11.3.5); and (2) the Agreements each involve commerce, in that the purpose of the Agreements is the sale of wireless service and telephones (*id.*). Further, AT&T Mobility and its predecessor Cingular Wireless II, are multi-state companies. *See* AT&T Mobility's Certification of Interested

4

CASE NO. CV 07-05463 WHA: NOT. OF MOT. AND MOT. BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO

1  Entities or Persons; 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. Inc. v. Dobson*, 513 U.S. 265,
2  269 and 282, 115 S. Ct. 834, 837 and 843, 130 L. Ed. 2d 753, 761 and 769 (1985).
3        The FAA mandates that written agreements to arbitrate disputes "shall be valid,
4  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the
5  revocation of any contract." 9 U.S.C. § 2. "By its terms, the Act leaves no place for the
6  exercise of discretion by a district court, but instead mandates that district courts *shall* direct
7  the parties to proceed to arbitration on issues as to which an arbitration agreement has been
8  signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L.
9  Ed. 2d 158, 163 (1985). "Accordingly, the first task of a court asked to compel arbitration of
10 a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi*
11 *Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 626 105 S. Ct. 3346, 3353, 87
12 L. Ed. 2d 444, 454 (1985).
13       It is indisputable that Viva agreed to arbitrate the Counterclaims. Each executed
14 agreement from which a Counterclaim arises contains a valid arbitration provision
15 specifically or by incorporation. *See* Miguel Decl. ¶¶ 3-6, Exh. A at 10.2.1; Exh. B at 11.3.1,
16 Exh. C at Section 4f and Exh. D at Section 13. Further, each of the Counterclaims falls
17 within such arbitration provision. *Id.*

**A.   Valid Arbitration Agreements Exist.**

19       As set forth above in section II. A., the signed Original Dealer Agreement, Dealer
20 Agreement, SMF Release and APA contain, specifically or by incorporation, valid written
21 agreements to arbitrate. *See* Miguel Decl. ¶¶ 3-6, Exh. A at 10.2.1; Exh. B at 11.3.1, Exh. C
22 at Section 4f and Exh. D at Section 13.

**B.   The Counterclaims Fall Within the Scope of the Agreements.**

24       Each of the Counterclaims asserted falls within the applicable arbitration agreements.
25 *See* Miguel Decl. ¶¶ 3-6, Exh. A at 10.2.1; Exh. B at 11.3.1, Exh. C at Section 4f and Exh. D
26 at Section 13.
27       Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration
28 agreements * * *[,] to place [these] agreements upon the same footing as other contracts[,] *

5

CASE NO. CV 07-05463 WHA: NOT. OF MOT. AND MOT. BY AT&T MOBILITY II,
LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO

1  * * [and to] manifest a liberal federal policy favoring arbitration agreements." *EEOC v.*
2  *Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quotation marks omitted). Accordingly,
3  "questions of arbitrability must be addressed with a healthy regard for the federal policy
4  favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24
5  (1983).
6        Here, the applicable arbitration agreements provide "**all claims (including**
7  **counterclaims and cross-claims) and disputes** between Dealer [Viva] and Company [AWS]
8  must be resolved by submission to binding arbitration" (*see* Miguel Decl. ¶ 3, Exh. A at
9  10.2.1 [Emphasis added]) and "**all claims (including counterclaims and cross-claims and**
10 **also including claims based on tort or other legal theories) and disputes** between Dealer
11 [Viva] and Company [AT&T Mobility] must be resolved by submission to binding
12 arbitration . . ." (*see* Miguel Decl. ¶ 4, Exh. B at 11.3.1 [Emphasis added]). Every one of the
13 Counterclaims represents a "claim" or "dispute" between Viva and AT&T Mobility (as
14 successor to Cingular Wireless II, LLC). *See* Counterclaims at ¶¶ 29-67. Accordingly, every
15 Counterclaim is subject to arbitration under the terms of the arbitration agreements.

## IV. CONCLUSION

17       Viva entered into valid written agreements to arbitrate the claims asserted by
18 Pestano (as alleged assignee of Viva) in the Counterclaims. The FAA "leaves no place for
19 the exercise of discretion by a district court, but instead mandates that district courts *shall*
20 direct the parties to proceed to arbitration on issues as to which an arbitration agreement
21 has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218, 105 S. Ct. at 1241, 84 L.
22 Ed. 2d at 163. AT&T Mobility respectfully requests that this Court grant its motion and
23 compel arbitration of each and every one of the Counterclaims asserted by Pestano in this
24 action.

25 DATED: January 23, 2008             KOHUT & KOHUT LLP

By: _____
Ronald J. Kohut, Esq.
Sarah K. Kohut, Esq.
Attorneys for Plaintiff
AT&T Mobility II, LLC

6

---

**CASE NO. CV 07-05463 WHA: NOT. OF MOT. AND MOT. BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO**

# PROOF OF SERVICE

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 600 Anton Blvd, Suite 1075, Costa Mesa, California 92626.

On January 23, 2008, I served the foregoing document: **NOTICE OF MOTION AND MOTION BY AT&T MOBILITY II, LLC TO COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO [UNREDACTED]** on all interested parties in said action by placing a true copy thereof in a sealed envelope addressed as follows:

Venkat Balasubramani, Esq.
BALASUBRAMANI LAW
8426 40th Ave., SW
Seattle, Washington 98136
Fax: (206) 260-3966

( )   **BY MAIL**, as follows:

   ( )   **STATE** – I am readily familiar with Kohut & Kohut LLP's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Costa Mesa, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

   (XX)  **FEDERAL** – I deposited such envelope in the U.S. Mail at Costa Mesa, California with postage thereon fully paid.

( )   **BY PERSONAL SERVICE**, as follows: I caused a copy of such document to be served by hand to the addresses.

(XX)  **BY OVERNIGHT DELIVERY**, as follows: I caused such envelope to be delivered by overnight delivery service to the offices of the addressee. The envelope was deposited in or with a facility regularly maintained by the overnight delivery service with delivery fees paid or provided for.

( )    **BY FACSIMILE**, as follows: I caused such documents to be transmitted to the telephone number of the addressee listed above, by use of facsimile machine telephone number (714) 384-4131  The facsimile machine used complied with *California Rules of Court*, Rule 2004 and no error was reported by the machine.  Pursuant to *California Rules of Court*, Rule 2006(d), a transmission record of the transmission was printed.

( )    **BY CERTIFIED MAIL**, as follows: I am "readily familiar" with Kohut & Kohut LLP's practice for the collection and processing of correspondence for mailing with the U.S. Postal Service, such envelope will be deposited with the U.S. Postal Service on the above date in the ordinary course of business at the business address shown above; and such envelope was placed for collection and mailing, by Certified U.S. Mail, Return Receipt Requested, on the above date according to Kohut & Kohut LLP's ordinary business practice.

( )    **STATE** – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

(X)    **FEDERAL** – I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **January 23, 2008**, at Costa Mesa, California.

AYRIKA S. FERNANDES

PROOF OF SERVICE

2