# EXHIBIT C

# EXHIBIT C

## SETTLEMENT AND RELEASE CONCERNING DEALER'S
## PRE-2/1/06 TOTAL SUBSCRIBER BASE ("2/1/06 SMF Release")

This Settlement and Release Concerning Dealer's Pre-2/1/06 Total Subscriber Base is effective as of February 1, 2006 (the "Effective Date") and is between Viva Wireless ("Dealer") and Cingular Wireless II, LLC and its affiliates ("Cingular"). Capitalized terms used in this 2/1/06 SMF Release that are not defined in this document take the definition provided in the Dealer Agreement.

### BACKGROUND

Dealer and Cingular (through Cingular's predecessor AT&T Wireless Services, Inc.) are parties to an Exclusive Dealer Agreement for the Northern California market dated September 1, 2001 (the "Dealer Agreement"). Starting on September 1, 2005, Cingular's revised Compensation Schedule to the Dealer Agreement transitioned Dealer's continuing service awards ("CSA") into Subscriber Management Fees ("SMF"). In accordance with Dealer's Compensation Schedule that became effective September 1, 2005 (but is dated August 1, 2005) Dealer's subscriber base from before September 1, 2005 is called Dealer's Pre-9/1/05 Blue Subscriber Base.

As part of Cingular's effort to consolidate systems and simplify the compensation process, the parties have agreed to settle on a value for all SMF that Dealer is or will be eligible to earn from all subscribers in both Dealer's Pre-9/1/05 Blue Subscriber Base and in Dealer's Eligible Subscriber Base through and including January 31, 2006 ("Dealer's Pre-2/1/06 Total Subscriber Base"). As a result, all Pre-9/1/05 Blue SMF and all SMF for which Dealer would be eligible under the Dealer Agreement based on all subscribers Dealer activated through and including January 31, 2006 ("Dealer's Total Pre-2/1/06 SMF") are eliminated in exchange for the monthly payment as described below.

In consideration of these facts and the monthly payment to be provided by Cingular to Dealer, the parties agree as follows:

### AGREEMENT

1. **Payment**. A. Cingular will pay Dealer the sum of $22,655.45 each month for 24 months ("Monthly Payment"). The first Monthly Payment will be in or about March 2006 for the month of February, 2006 and the Monthly Payment will be in effect under this 2/1/06 SMF Release for 24 consecutive months, or for as long as the Dealer Agreement is in effect, whichever is shorter. Dealer will no longer be eligible for this Monthly Payment upon the termination or expiration of its Dealer Agreement under any circumstances. In addition to the Monthly Payment, Cingular shall pay Dealer the one time sum of $192,152.64 ("One Time Payment") not later than April 30, 2006.
B. Cingular's agreement to the Monthly Payment and the One Time Payment is in exchange for the complete elimination of Dealer's Pre-2/1/06 Total Subscriber Base and Dealer's Total Pre-2/1/06 SMF. As of the Effective Date, Dealer will no longer be eligible for Dealer's Total Pre-2/1/06 SMF under the Dealer Agreement. Starting on the Effective Date, Dealer is eligible to begin adding subscribers into a brand new base of Dealer's Eligible Subscriber Base for SMF purposes.

2. **Release.** Dealer hereby forever releases, waives and discharges Cingular, any parent company or subsidiary, and any company, partnership, joint venture

Rev 12-14-05

Cingular Wireless Proprietary and Confidential
Use according to Company Instructions

Exhibit C

Page 51

Entire Pg. redacted pursuant to pending Order to Seal

or other entity owned by or affiliated with Cingular, and any general partners thereof, and any successor, assigns, or predecessors, and the officers, directors, attorneys, agents, employees and shareholders of each of the foregoing (collectively, the "Released Parties") from any and all claims or causes of action known or unknown that Dealer may have, individually or jointly with another party, including but not limited to claims for attorneys' fees, that are related to Dealer's Pre-2/1/06 Total Subscriber Base and Dealer's Total Pre-2/1/06 SMF (including its former CSAs) under the Dealer Agreement.

    3. <u>Covenant Not To Sue</u>.   Dealer hereby expressly covenants and agrees forever to refrain from bringing any arbitration, suit, or proceeding at law or in equity against any and all of the Released Parties and their successors in interest or assigns, arising out of or in any way related to any claim released in this 2/1/06 SMF Release.

    4. <u>Miscellaneous.</u>   a.   This 2/1/06 SMF Release does not constitute an admission of any wrongdoing on the part of any party hereto.
  b. This 2/1/06 SMF Release constitutes Confidential Information under the terms of the Dealer Agreement.
  c. This 2/1/06 SMF Release constitutes the entire agreement between the parties with respect to the subject matter hereof, all oral agreements being merged herein, and supersedes all prior representations and agreements. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties relating to the subject matter of this 2/1/06 SMF Release that are not fully expressed herein.
  d. This 2/1/06 SMF Release has been carefully read by both parties and the contents hereof are known and understood. Dealer has the opportunity to receive independent legal advice from attorneys of its choice with respect to the review and advisability of executing this 2/1/06 SMF Release.
  e. This 2/1/06 SMF Release is governed by, and interpreted under the laws of the State of New York.
  f. Any disputes related to this 2/1/06 SMF Release between the parties must be resolved under the dispute provisions of the Dealer Agreement.

Viva Wireless

By: _[signature]_
Carolyn Pestano
CEO

Date: 3/20/06

Cingular Wireless II, LLC

By: _[signature]_
Fred Devereux
Vice President/General Manager

Date: 4/14/06

GOD-NoCal 4/12/06

West RCFO 4/7/06

Ralph DelaVega   5/3/06
DATE

_[signature]_   5/4/06

Rev 12-14-05       Cingular Wireless Proprietary and Confidential       Entire Pg. redacted pursuant
                   Use according to Company Instructions              to pending Order to Seal
Exhibit C
Page 52

# EXHIBIT D

# EXHIBIT D

## Advance Payment Agreement

This **Advance Payment Agreement** ("APA") is entered into on October _10_, 2006, between **Cingular Wireless II, LLC**, and its affiliates in the Area, ("Cingular"), with its office at 74420 Rosewood, Bldg. 2, Pleasanton, CA 94588, and **Viva Wireless, Inc.**, with its office at 3521 Investment Blvd., Ste. 2, Hayward, CA 94545 ("Dealer").

### RECITALS

Dealer is a party with Cingular to an existing Exclusive Dealer Agreement effective January 1, 2006 ("Dealer Agreement") and a Settlement and Release Concerning Dealer's Pre-2/1/06 Total Subscriber Base effective February 1, 2006 ("2/1/06 SMF Release").

Cingular makes periodic compensation payments to Dealer under both the Dealer Agreement and the 2/1/06 SMF Release. Dealer has requested that Cingular pay Dealer an advance a portion of its monthly payments due under the 2/1/06 SMF Release and Cingular agrees to advance Dealer said monthly payments subject to the terms of this APA.

Cingular and Dealer, in consideration of the mutual promises in this APA, agree as follows:

1. Cingular will advance Dealer the following: $250,000.00 for the build-out of four (4) new dealer retail locations retail locations approved by Cingular pursuant to the terms of the Dealer Agreement and the renovation of two (2) existing dealer retail locations (locations listed Exhibit A on the attached hereto), subject to terms of the this APA (the "Advance"). Cingular shall pay Dealer the Advance within thirty (30) days of the date of this APA.

2. Dealer agrees to reimburse Cingular for the Advance from future monthly payments due to Dealer under the 2/1/06 SMF Release as follows: Beginning in the first month in which a monthly payment is due to Dealer under the 2/1/06 SMF Release after this APA is executed and continuing each month until Dealer repays Cingular for 100% of the Advance, Cingular will withhold a maximum of $20,000.00 per month from the monthly payment due to Dealer under the 2/1/06 SMF Release.

3. The full balance of Advance shall become immediately due and payable by Dealer to Cingular upon the occurrence of any of the following: (a) the termination of the Dealer Agreement, or (b) Dealer's breach of any of the terms of this APA. Furthermore, in the event that Dealer defaults on payment of the Advance under the terms of this APA, Carolyn Pestano, Chief Executive Officer of Dealer, has executed a Personal Guaranty (attached hereto as Exhibit B), whereby she agrees to personally guarantee the immediate payment of the full balance of the Advance pursuant to the terms therein.

Advance Payment Agreement between
Cingular and Dealer and Principal -- Page 1

Entire Pg. redacted pursuant
to pending Order to Seal

Exhibit _D_
Page _53_

4. The parties hereto agree that they shall keep confidential the terms and conditions of this APA, and that they will not disclose any of the provisions of this APA, including the fact that Cingular advanced build out funds to Dealer and the amount of the Advance, except to persons or entities necessary for the administration or enforcement of this APA, such as accountants and insurers, and except as provided by law or court order. If disclosure of the provisions of this APA is necessary by law or court order, the disclosing party shall, where possible, give ten (10) days written notice of its intention to disclose to the other parties.

5. This APA shall be construed and interpreted in accordance with the laws of the State of California. If any provision is declared by any court to be invalid, the validity of the remaining provisions shall not be affected, and the invalid provision shall be deemed not a part of this APA.

6. This APA, including but not limited to all of the covenants, agreements, representations and warranties herein, will be deemed to be effective upon, and their validity and enforceability is mutually dependent upon the execution and delivery to the parties, in accordance with its terms, of this APA and all documents referred to herein.

7. This APA may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8. The parties represent and warrant that the execution and delivery of this APA and the actions required by the APA have been duly authorized and that this APA is a valid and binding agreement enforceable against them in accordance with its terms. The parties and the undersigned representatives individually further warrant and represent that the undersigned are duly authorized to execute and deliver this APA on behalf of them. The parties further represent and warrant that they are not breaching or interfering with any agreement, right or obligation to any person, entity, party or non-party by entering into the provisions of this APA.

9. This APA does not relieve Dealer of existing liabilities to Cingular under the Dealer Agreement or any other agreements between the parties, such as Dealer's payment for the purchase of equipment. Except as specifically set forth in this APA, this Advance does not revise the terms of either the Dealer Agreement or the 2/1/06 SMF Release and Cingular retains the right to amend and/or modify the terms of Dealer's compensation schedule to the Agreement as provided in the Agreement.

10. This APA may not be modified or amended without the express written consent of the parties hereto.

11. The waiver by any party of a breach of this APA shall be in writing and will in no way be construed as a waiver of any succeeding breach of such provision or the waiver of the provision itself.

Advance Payment Agreement between
Cingular and Dealer and Principal – Page 2

Exhibit __D__
Page __54__

Entire Pg. redacted pursuant to pending Order to Seal

12. All notices hereunder shall be in writing and deemed made and delivered by facsimile transmission, overnight express service, same or next day courier service, or by personal delivery to such party at its address given below, or such other address that shall have been furnished by such party in accordance with the terms of the Agreement.

13. This APA shall be construed and interpreted in conjunction with the Dealer Agreement and the 2/1/06 SMF Release. To the extent that this APA revises the terms of the Agreement or the 2/1/06 SMF Release, it shall be treated as an amendment to those respective documents. Similarly, to the extent that this APA adds to the terms of the Dealer Agreement or the 2/1/06 SMF Release, it shall be treated as a supplement to those respective documents. If a conflict exists between the terms of the Dealer Agreement, the 2/1/06 SMF Release and this APA, the terms of this APA shall control.

(Signature page to follow)

Advance Payment Agreement between
Cingular and Dealer and Principal – Page 3

Exhibit _D_
Page _55_

Entire Pg. redacted pursuant
to pending Order to Seal

SIGNED this 3rd day of October, 2006.

**VIVA WIRELESS, INC.**

By: _/s/ Carolyn Pestano_
Name: Carolyn Pestano
Title: Chief Executive Officer
Date: 10/3/06


**CINGULAR WIRELESS II, LLC d/b/a CINGULAR WIRELESS**

By: _/s/ Fred Devereux_
Name: Fred Devereux,
Title: Vice President & General Manager
Date: 10/10/06

Advance Payment Agreement between
Cingular and Dealer and Principal – Page 4
Exhibit D
Page 54

Entire Pg. redacted pursuant
to pending Order to Seal

# EXHIBIT A

**New Dealer Retail Locations:**

1. Southland Mall, 1 Southland Mall, Space #5540, Hayward, CA  94545
2. Eastridge, 2200 Eastridge Loop, Space #5534, San Jose, CA  95122
3. Arden Fair Mall, 1689 Arden Way, Space #17, Sacramento, CA  95815
4. NewPark Mall, 2086 Newpark Mall, Space #5541, Newark, CA  94560

**Existing Dealer Retail Locations for Renovation:**

1. 1 Stoneridge Mall, Space #15, Pleasanton, CA  94588
2. 447 Great Mall Drive, Space #ZMISC, Milpitas, CA  95035

Advance Payment Agreement between
Cingular and Dealer and Principal – Page 5

Exhibit _D_
Page _51_

Entire Pg. redacted pursuant
to pending Order to Seal

# EXHIBIT B
## DEALER PRINCIPAL PERSONAL GUARANTY

WHEREAS, pursuant to the **Advance Payment Agreement** ("APA") entered into on October 13, 2006, between **Cingular Wireless II, LLC**, and its affiliates in the Area, ("COMPANY"), and **Viva Wireless, Inc.**, ("DEALER"), GUARANTOR hereunder has incurred and/or may in the future incur obligations to COMPANY, and has and/or may in the future become indebted to COMPANY in connection with DEALER's performance under the APA; and

WHEREAS, in order to induce COMPANY to advance DEALER funds for the build-out of new authorized dealer retail locations, GUARANTOR agrees to personally guarantee any and all indebtedness incurred by DEALER as a result of COMPANY's agreement to advance funds to DEALER under the APA.

NOW, THEREFORE, for and in consideration of the agreements contained herein, and other good and valuable consideration, including COMPANY's agreement to advance DEALER funds under the APA, the receipt and adequacy of which are hereby acknowledged, the undersigned, as GUARANTOR, hereby unconditionally and absolutely guarantees to COMPANY the prompt and full payment and/or performance of any and all of DEALER's obligations under the APA, including payment in full of the Advance of $250,000.00, when the same shall be due and payable to COMPANY. It is agreed by the parties that this Guaranty is subject to the following terms and conditions:

1. In the event GUARANTOR fails to make any payment due COMPANY when due, or to perform any other obligation guaranteed by GUARANTOR hereunder in a timely manner, GUARANTOR shall be deemed in default under this Guaranty, and COMPANY may, in addition to any other remedies available to COMPANY at law or in equity, immediately declare all amounts due and owing COMPANY by GUARANTOR to be immediately due and payable.

2. This Guaranty is absolute, continuing and unlimited for the benefit of COMPANY and its successors and assigns, and COMPANY will not be required to proceed first, or at all, against DEALER or against any other person, firm, or corporation, or against any collateral or other security for payment or performance of the Obligations before resorting to the Guarantor. This Guaranty is binding not only on GUARANTOR, but on GUARANTOR's heirs, personal representatives, successors and assigns. This Guaranty shall be governed by and constructed in accordance with the laws of the State of California. All obligations of GUARANTOR hereunder are performable in Alameda County, California, at a location designated by COMPANY. GUARANTOR shall pay any and all reasonable attorney's fees and all other reasonable costs and expenses which may be incurred by COMPANY in the enforcement of this Guaranty.

3. GUARANTOR's performance under this Guaranty shall not affect DEALER's obligations to COMPANY under the APA or Exclusive Dealer Agreement effective January 1, 2006 between COMPANY and DEALER ("Dealer Agreement"). If GUARANTOR becomes liable to COMPANY for any other obligations, by endorsement or otherwise, such liability shall not in any manner be impaired or affected by this Guaranty, and the rights of COMPANY hereunder or under the Agreement shall be cumulative of any and all other rights that COMPANY may ever have against GUARANTOR. COMPANY's exercise of any right hereunder or under any other instrument shall not preclude the concurrent or subsequent exercise of any other right. If, for any reason whatsoever, COMPANY is now, or hereafter becomes indebted to GUARANTOR, such indebtedness and all interest thereon shall at all times be subordinate in all respects to the obligations of GUARANTOR hereunder, and GUARANTOR shall not be entitled to enforce or receive payment thereof until such obligations have been fully paid and/or performed. GUARANTOR shall not have any right of subrogation in or under any documents securing payment of GUARANTOR's obligations hereunder, and GUARANTOR expressly waives and releases any such rights of subrogation.

4. GUARANTOR hereby agrees that GUARANTOR's responsibilities under the terms of this Guaranty shall not be released, diminished, impaired or affected by the occurrence of any one or more of the following events:

    a. COMPANY's acceptance of any other security, collateral or guarantee for any or all of DEALER's obligations to COMPANY;

    b. The release, surrender, exchange, subordination, or loss of any security or collateral at any time existing in connection with any or all of DEALER's or GUARANTOR's obligations to COMPANY;

    c. The partial release of GUARANTOR hereunder, or if there is more than one person or entity signing the Guaranty, the complete or partial release of any one or more of them;

    d. The death, insolvency, bankruptcy, disability or termination of GUARANTOR or of any one or more of the persons comprising DEALER, or the dissolution, receivership, or reorganization of DEALER;

    e. Any renewal, extension, modification or rearrangement in connection with DEALER's or GUARANTOR's payment of any or all of DEALER's or GUARANTOR's obligations to COMPANY, either with or without notice to or consent of DEALER or GUARANTOR, or any adjustment, indulgence, forbearance, or compromise that may be granted or given by COMPANY to GUARANTOR or DEALER;

 f. (f) Any neglect, delay, omission, failure or refusal by COMPANY to take or prosecute any action for the collection of DEALER's or GUARANTOR's obligations hereunder, or COMPANY's failure to commence any action to foreclose upon any security or collateral given by DEALER or GUARANTOR therefor;

 g. Any failure of COMPANY to notify DEALER or GUARANTOR of any renewal, extension, rearrangements, modification or assignment of the obligations or any part thereof, it being understood that COMPANY shall not be required to give GUARANTOR any notice of any kind under any circumstances with respect to or in connection with GUARANTOR's obligations hereunder;

 h. The unenforceability or uncollectability of all or any part of the obligations against DEALER for any reason, it being agreed that GUARANTOR shall remain liable hereon regardless of whether DEALER or any other person shall be found not liable with respect to the obligations or any part thereof; or

 i. If any payment made by DEALER to COMPANY is held to constitute a preference under the bankruptcy laws, or if for any other reason COMPANY is required to refund or surrender any such payment.

5. This Guaranty shall continue in full force and effect until the amount owed to the COMPANY under the APA, $250,000.00, is paid in full. The amount owed to COMPANY may be paid in full at any time and shall not affect the obligation of GUARANTOR with respect to amounts thereafter incurred by DEALER or GUARANTOR.

6. It is the intent of GUARANTOR and COMPANY hereunder that the obligations and liabilities of GUARANTOR hereunder are absolute and unconditional and that until the obligations are fully and finally paid and/or performed, such obligations shall not be discharged or released in whole or in part, or by any act or occurrence which might, but for the provisions of this Guaranty, be deemed a discharge or release of GUARANTOR's obligations to COMPANY.

7. GUARANTOR represents that GUARANTOR is the owner of a direct or indirect interest in DEALER and that GUARANTOR will receive a direct and material benefit under this Guaranty.

IN WITNESS WHEREOF, this Guaranty is executed by GUARANTOR this 3rd day of October, 2006.

GUARANTOR:

Signed: _[signature]_

Name: Carolyn Pestano

Title: Chief Executive Officer

THE STATE OF CALIFORNIA §
§
COUNTY OF Alameda §

SWORN TO AND SUBSCRIBED before me the undersigned notary public on this the 3rd day of October, 2006, to which witness my hand and seal.

_[signature]_
Notary Public, State of California

Selena M Jordan
Printed Name

My Commission Expires:

08-02-08

SELENA M. JORDAN
COMM. # 1505115
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires AUG 02, 2008