1  Ronald J. Kohut, Esq. (SBN 66463)
   *ron@kohutlaw.com*
2  Sarah K. Kohut, Esq. (SBN 197655)
   *sarah@kohutlaw.com*
3  KOHUT & KOHUT LLP
   3554 Round Barn Blvd., Suite 204
4  Santa Rosa, California  95403
   Telephone: (707) 573-3100
5  Facsimile:  (707) 573-3101

6  Attorneys for Plaintiff and Cross-Defendant
   AT&T MOBILITY II, LLC

7

               UNITED STATES DISTRICT COURT
8
               NORTHERN DISTRICT OF CALIFORNIA
9

10  AT&T MOBILITY II, LLC, a Delaware limited     )   Case No. CV 07-05463 WHA
    liability company,                            )
11                                                )   REPLY IN SUPPORT OF
                                                  )   MOTION BY AT&T
12              Plaintiff,                         )   MOBILITY II, LLC TO
                                                  )   COMPEL ARBITRATION OF
13       v.                                        )   COUNTERCLAIMS OF
                                                  )   CAROLYN PESTANO
14  CAROLYN PESTANO, an individual,              )
                                                  )   [Declarations of Scott Davis,
15              Defendant.                         )   Matthew Woolsey, and Ronald
                                                  )   J. Kohut, and Supplemental
16                                                )   Declaration of Sarah K. Kohut
    AND RELATED COUNTERCLAIMS                     )   filed Concurrently]
17                                                )
                                                  )
18                                                )
                                                  )
19                                                )
                                                  )   Date:  March 6, 2008
20                                                )   Time: 8:00 a.m.
                                                  )   Courtroom: 9
21                                                )
                                                  )
22  _____ )

23

24

25

26

27

28

---

CASE NO. CV 07-05463 WHA:  REPLY IN SUPPORT OF MOTION BY AT&T MOBILITY II, LLC TO
COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT ..............................................................................................1

    A.    AT&T Mobility Did Not Waive Its Right to Arbitrate
        the Viva Claims .................................................................................1

        1.    The APA and Guaranty Are Separate Agreements ...........................2

        2.    AT&T Mobility Did Not Waive Its Right to Arbitrate
            The Viva Claims ......................................................................4

            (a)    AT&T Mobility Could Not Arbitrate Its Claims
                Under the Guaranty Because Pestano Never
                Agreed to Arbitration ......................................................4

            (b)    AT&T Mobility Consistently Asserted Its Right
                to Arbitrate the Viva Claims .......................................5

            (c)    Pestano Has Not Suffered Prejudice ..........................5

    B.    The Arbitration Clause In the 2006 Dealer Agreement Is
        Not Unconscionable ..........................................................................6

        1.    The 2006 Arbitration Clause is Not Procedurally
            Unconscionable ........................................................................6

        2.    The 2006 Arbitration Clause is Not Substantively
            Unconscionable ........................................................................8

            (a)    Whether the Notice and Assignment Provisions
                Are Unconscionable is For the Arbitrator
                To Decide .......................................................................8

            (b)    California Law Enforces Contractual Limitations
                Provisions of 180 days .................................................9

i

(c)    Requiring Corporations to Split Arbitration
Fees is Not Substantively Unconscionable ...........................10

(d)    The Confidentiality Agreement is Not
Substantively Unconscionable ...............................................11

(e)    Each Provision Complained of Can Be
Severed ...................................................................................11

C.    Viva's Clams Arising From the SMF Release and APA
are Arbitrable ...........................................................................................12

1.    The Parties Agreed the SMF Release is Subject to
Arbitration ................................................................................12

2.    The APA is Subject to Arbitration ........................................14

3.    This Motion Does Not Purport to Affect Pestano's
Affirmative Defenses ..............................................................15

III.    CONCLUSION.............................................................................................15

ii

# TABLE OF AUTHORITIES

## Federal Cases

*Beauperthuy v. 24 Hour Fitness*
2006 U.S. Dist. LEXIS 88988 (N.D. Cal. 2006) ..................................................5

*Brown v. Dillard's Inc.*
430 F.3d 1004 (9th Cir. 2005)..........................................................2, 3, 5

*Buckeye Check Cashing, Inc. v. Cardegna*
546 U.S. 440 (2006) ..................................................................8, 12

*Davis v. O'Melveny & Meyers,*
485 F.3d 1066 (9th Cir. 2007) ..........................................................9, 11

*Fisher v. A.G. Becker Paribas Inc.*
791 F.2d 691 (9th Cir. 1986) ............................................................4

*Homestake Lead Co. v. Doe Run Res. Corp.*
282 F. Supp. 2d 1131 (N.D.Cal. 2003) ..................................................4

*Indian Motorcycle Corp. v. Yamin Motorcycle*
2003 U.S. Dist. LEXIS 25188 (N.D. Cal. 2003) ..........................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*
473 U.S. 614 (1985) ..................................................................4

*Moses H. Cone Hospital v. Mercury Const. Corp.*
460 U.S. 1 (1983) ..................................................................13

*Nagrampa v. Mailcoups, Inc.*
469 F.3d 1257 (9th Cir. 2006) ..........................................................10

*Nova Wines, Inc. v. Adler Fels Winery LLC*
2007 U.S. Dist. LEXIS 9141 (N.D. Cal. 2007)..........................................3, 4

*Petroleum Sales, Inc. v. Valero Refining Company*
2006 U.S. Dist. LEXIS 90419 (N.D. Cal. 2006) ........................................6, 7, 8

iii

*Perez v. Safety-Kleen Sys.*
2007 U.S. Dist. LEXIS 48308 (N.D. Cal. June 27, 2007) ...................................9

*Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.*
2007 U.S. Dist. LEXIS 96096 (N.D. Cal. September 13, 2007) .......................4, 5

*Soltani v. Western & Southern Life Ins. Co.*
258 F.3d 1038 (9th Cir. 2001) ..........................................................................9

*United Computer Sys v. AT&T Info. Sys.*
298 F.3d 756 (9th Cir. 2002) .........................................................................4, 5

**California Cases**

*24 Hour Fitness, Inc. v. Superior Court*
66 Cal. App.4th 1199 (1989) .............................................................................6

*A&M Produce Co. v. FMC Corporation*
135 Cal. App.3d 473 (1982) ..............................................................................6

*American Software, Inc. v. Ali*
46 Cal. App.4th 1386 (1996) .............................................................................8

*Armendariz v. Foundation Health Psychcare Services, Inc.*
24 Cal. 4th 83 (2000) .................................................................................10, 12

*Beeson v. Schloss*
183 Cal. 618 (1920) ..........................................................................................9

*Boghos v. Certain Underwriters at Lloyd's of London*
36 Cal. 4th 495 (2005) ...............................................................................10, 11

*Boys Club of San Fernando Valley v. Fid & Deposit Co.*
6 Cal. App.4th 1266 (1992) .............................................................................12

*California Grocers Association Inc. v. Bank of America*
22 Cal. App.4th 205 (1994) ...............................................................................8

*Capehart v. Heady*
206 Cal. App.2d 386 (1962) ..............................................................................9

iv

*Chan v. Drexel Burnham Lambert, Inc.*
178 Cal. App.3d 632 (1986) ........................................................... 13, 14, 15

*Dean Witter Reynolds, Inc. v. Superior Court*
211 Cal. App.3d 758 (1989) ...................................................................... 7

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh v. 100 Oak St.*
35 Cal. 3d 312 (1983) ............................................................................ 13

*Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court*
133 Cal. App.4th 396 (2005) ............................................................. 10, 11

*King v. Larsen Realty, Inc.*
121 Cal. App.3d 349 (1981) .................................................................... 12

*Kurashige v. Indian Dunes, Inc.*
200 Cal. App.3d 606 (1988) ..................................................................... 7

*McCarthy, Kearney & Walsh v. 100 Oak St.*
35 Cal. 3d 312 (1983) ............................................................................ 13

*McManus v. CIBC World Markets Corp.*
109 Cal. App.4th 76 (2003) .................................................................... 11

*Morris v. Redwood Empire Bancorp.*
128 Cal. App.4th 1305 (2005) .............................................................. 6, 7

*Patchett v. Bergamot Station, Ltd.*
143 Cal. App.4th 1390 (2006) ................................................................. 13

*Service Employees Internat. Union, Local 1000 v. Department of Personnel Admin.*
142 Cal. App.4th 866 (2006) .................................................................. 13

*Shaw v. Regents of Univ. Of Cal.*
58 Cal. App.4th 44 (1997) ................................................................. 14, 15

*United Transp. Union v. S. Cal. Rapid Transit Distr.*
7 Cal. App.4th 804 (1992) ...................................................................... 13

v

---

*West v. Henderson*
227 Cal. App.3d 1578 (1991) ................................................................... 9

**Federal Statutes**

15 U.S.C. § 1666(a) ................................................................................. 9

15 U.S.C. § 1692g ................................................................................... 9

**California Statutes**

Cal. Code Civ. Proc. §1284.2 ................................................................. 10

Cal. Gov. Code § 905 ............................................................................... 9

Cal. Gov. Code § 945.4 ............................................................................ 9

CASE NO. CV 07-05463 WHA:  REPLY IN SUPPORT OF MOTION BY AT&T MOBILITY II, LLC TO
COMPEL ARBITRATION OF COUNTERCLAIMS OF CAROLYN PESTANO

## I.    INTRODUCTION

In determining the motion to compel arbitration there are four important facts to keep in mind.

- There are three parties involved in this dispute; Plaintiff and Cross-Defendant AT&T Mobility II LLC ("AT&T Mobility"), Defendant Carolyn Pestano ("Pestano") and Viva Wireless, Inc. ("Viva").[1] This difference of parties defeats the Opposition's argument that AT&T Mobility breached the Advanced Payment Agreement ("APA") and/or waived its right to arbitrate the Viva Claims by initiating this action against Pestano under the "Dealer Principle Guaranty" ("Guaranty). Opposition at 4:21-8:7.

- The arbitration provisions at issue were entered into by two corporations – not a corporation and a consumer, nor an employer and employee. Declaration of Marc Miguel ("Miguel Decl."), Exhs. A-C, D at 1-4. In evaluating the Opposition's unconscionability argument (which only goes to one of the arbitration provisions at issue) the Court must look to the standards applied in the business context, not the employee/consumer standards argued in the Opposition.

- Arguments challenging the entire contract are for the arbitrator not the court, to decide. Viva's argument that the SMF Release and APA are not arbitrable, is not supported by the language of those agreements and challenges the entire agreements.

- AT&T Mobility's counsel specifically raised the arbitration issue in the Federal Rule of Civil Procedure 26(f) ("Rule 26(f)") conference between counsel and offered to arbitrate the **entire** action. *See* Declaration of Ronald. J. Kohut ("R. Kohut Decl.") ¶ 3; Declaration of Sarah K. Kohut ("S. Kohut Decl.") ¶ 3. This offer remains open. *Id.*

## II.    ARGUMENT

**A.    AT&T Mobility Did Not Waive Its Right to Arbitrate the Viva Claims.**

The Opposition argues that AT&T Mobility breached the APA and/or waived its right

---

[1]    Viva has asserted its claims in this action through a purported assignment to Pestano. *See* Counterclaims at fn 1. To alleviate the party confusion the assignment has created, AT&T Mobility refers to Pestano as "Viva" when Viva's claims or actions are at issue and refers to the counterclaims as the "Viva Claims."

1

1 to arbitrate the Viva Claims by filing this action against Pestano.[2] *See* Opposition at 4:28-

2 5:11. This argument is premised upon the contention that the APA and Guaranty are one

3 agreement and by filing this action to recover under the Guaranty, AT&T Mobility acted

4 inconsistently with its right to arbitrate under the APA and thus, either breached the APA or

5 waived its right to arbitrate with Viva. Opposition at 4:21-8:7. The Opposition's argument is

6 belied by the very terms of the APA and Guaranty and by AT&T Mobility's actions in this

7 case, which have been consistent with its right to arbitrate the Viva Claims.

8 **1. The APA and Guaranty Are Separate Agreements.**

9 The Opposition argues that AT&T Mobility breached the APA by bringing suit

10 against Pestano under the Guaranty. Opposition at 4:22-26. The Guaranty, however,

11 contains **no** arbitration provision. Miguel Decl. at 6-9. The Opposition's argument turns on

12 the contention that the APA , which contains an arbitration agreement by incorporation, and

13 the Guaranty, which does not, are one agreement, not two. The APA and Guaranty are

14 separate agreements between different parties, with different rights.

15 The parties to the APA and the parties to the Guaranty are not the same. The APA

16 expressly states that it is "entered into . . . between Cingular Wireless II, LLC . . . and Viva

17 Wireless, Inc." Miguel Decl. Exh. D at 1, ¶ 1. Pestano is a party to the APA. *Id.* at 1-4.

18 Likewise, Viva is not a party to the Guaranty. *See* Miguel Decl. Exh. D at 6-9.

19 At section 3 of the APA, the Guaranty is specifically referenced as a separate

20 agreement. Miguel Decl. Exh. D 1, § 3 ("[I]n the event that Dealer defaults on payment of

21 the Advance under the terms of this APA, Carolyn Pestano, Chief Executive Officer of

22 Dealer, has executed a Personal Guaranty (attached hereto as Exhibit B), whereby she agrees

23 to personally guarantee the immediate payment of the full balance of the Advance pursuant to

24 the terms therein"). The Guaranty also references the APA as a separate agreement between

25 AT&T Mobility's predecessor and Viva. Miguel Decl. Exh. D at 6, ¶ 1-3.

26 In support of its claim of breach of contract, the Opposition cites *Brown v. Dillard's*

27

28 [2]    Section C of the Opposition argues the APA does not contain an obligation to arbitrate. *See* Opposition at 17:1-18:6. If true, then Viva's entire waiver argument fails.

2

1  *Inc.,* 430 F.3d 1004 (9th Cir. 2005). In *Dillard's,* a former employee filed a claim with the

2  American Arbitration Association ("AAA") against Dillard's in compliance with the

3  arbitration provision contained in her employment agreement. *Dillard's,* 430 F.3d at 1008-

4  1009. Dillard's refused to arbitrate. *Id.* In response to Dillard's refusal, the employee filed

5  an action in California state court. *Id.* at 1009. Dillard's removed the case and brought a

6  motion to compel arbitration. *Id.* The district court denied the motion. *Id.* The Ninth

7  Circuit affirmed the denial on the basis that Dillard's had breached the employment

8  agreement between it and the employee by refusing to participate in the arbitration initiated

9  by the employee. *Id.* at 1010. *Dillard's* is inapposite to the facts presented in this action.

10  *Nova Wines, Inc. v. Adler Fels Winery LLC,* 2007 U.S. Dist. LEXIS 9141 (N.D. Cal.

11  2007) is on point. In *Nova Wines,* Nova initiated an action asserting claims against Adler

12  Fels, TKS, Pacific Licensing and Saal for trademark infringement, false designation, unfair

13  competition, trademark dilution, and intentional interference with economic advantage. *Id.*

14  TKS filed counterclaims and Nova moved to compel arbitration of those claims under an

15  arbitration agreement between it and TKS. *Id.* TKS argued that Nova waived arbitration by

16  initiating the court action. *Id.* at 9. This district court compelled arbitration, finding Nova

17  did not waive its right to compel arbitration because (1) Nova could not have brought an

18  arbitration proceeding against Adler Fels as there was no arbitration agreement between

19  Nova and Adler Fels; and (2) the licensing claims Nova initiated against TKS were not

20  within the scope of the arbitration agreement. *Id.* at 11.

21  Like Nova, AT&T Mobility filed this action against Pestano, a party that never

22  entered into an arbitration agreement with AT&T Mobility, under the Guaranty, an

23  agreement that does not contain an arbitration provision. *See* Complaint and Miguel Decl.

24  Exh. D at 6-9. In response, Viva, like TKS, asserted counterclaims that fall within the

25  arbitration agreements entered into by AT&T Mobility and Viva. *See* Counterclaims; Miguel

26  Decl. Exhs. A-D at 1-4. In response to the Viva Claims, AT&T Mobility, like Nova, filed its

27  motion to compel arbitration of those claims. *See* Motion to Compel Arbitration. Under the

28  authority set forth by this district court in *Nova Wines,* AT&T Mobility's actions are

consistent with the terms of the APA , do not constitute a breach of the APA nor a waiver of AT&T Mobility's right to arbitrate the Viva Claims, and entitle AT&T Mobility to enforce the APA's arbitration provision. *Nova Wines*, 2007 U.S. Dist. LEXIS 9141 at 11.

### 2.  AT&T Mobility Did Not Waive Its Right to Arbitrate the Viva Claims.

The Opposition argues that by filing suit to enforce Pestano's individual obligations under the Guaranty, AT&T Mobility waived its rights to compel arbitration of the Viva Claims, *i.e.* claims belonging to Viva, a third party AT&T Mobility did not initiate litigation against. *See* Opposition at 4:22-8:7. "Waiver of a contractual right to arbitrate is disfavored; accordingly, "any party arguing waiver of arbitration bears a heavy burden of proof." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (internal quotation marks and citations omitted). A constructive waiver requires proof of the following elements: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with those rights; and (3) prejudice to the party opposing arbitration resulting from the inconsistent acts. *United Computer Sys. v. AT&T Info. Sys.*, 298 F.3d 756, 765 (9th Cir. 2002)." *Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.*, 2007 U.S. Dist. LEXIS 96096 at 36 (N.D. Cal. September 13, 2007). The Opposition does not prove any of these elements.

> ### (a) *AT&T Mobility Could Not Arbitrate Its Claims Under the Guaranty Because Pestano Never Agreed to Arbitration.*

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether **the parties** agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 626 105 S. Ct. 3346, 3353, 87 L. Ed. 2d 444, 454 (1985) (Emphasis added).  Similarly, the first element a party seeking to prove waiver must prove is "knowledge of an existing right to compel arbitration." *Santana Row Hotel Partners,* 2007 U.S. Dist. LEXIS 96096 at 36.  Viva agreed to arbitrate its claims, Pestano did not.  Because there was never any agreement to arbitrate between AT&T Mobility (or its predecessor) and Pestano, a claim of waiver fails.

"Arbitration is a matter of contract and the court cannot require a party to arbitrate a dispute unless the party has agreed to do so." *Homestake Lead Co. v. Doe Run Res. Corp.*,

4

1   282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003). The Guaranty does not contain an arbitration

2   provision. *See* Miguel Decl. ¶ 6, Exh. D at p. 6-9. Pestano, as an individual, is not a party to

3   any of the agreements that do contain arbitration agreements (Original Dealer Agreement,

4   2006 Dealer Agreement, SMF Release, and APA). *See* Miguel Decl. Exhs. A-D. Because

5   there is no legal or contractual right for AT&T Mobility to arbitrate against Pestano under the

6   Guaranty, AT&T Mobility could not have "knowledge of an existing right to compel

7   arbitration" against Pestano. Pestano's waiver claim thus, cannot stand.

8   　　　*(b) AT&T Mobility Consistently Asserted Its Right to Arbitrate the Viva Claims.*

9   　　　The second element of waiver is "acts inconsistent with that right [to arbitrate]."

10  *United Computer Sys.*, 298 F.3d at 765. This element cannot be met because AT&T Mobility

11  has consistently maintained that the Viva Claims are arbitrable.

12  　　　Unlike the defendants in *Beauperthuy v. 24 Hour Fitness,* 2006 U.S. Dist. LEXIS

13  88988 (N.D. Cal. 2006), and *Dillard's,* AT&T Mobility never denied its obligation to

14  arbitrate the Viva Claims and asserted its intent to compel arbitration of the Viva Claims at

15  the Rule 26(f) conference between counsel (*see* R. Kohut Decl. ¶ 3 and S. Kohut Decl. ¶ 3),

16  in the Joint Case Management Statement (*see* Supp. S. Kohut Decl. Exh. 1 at 2:18-19; 4:27-

17  5:2 and 17-18; 6:16-28; 7:1-6; 8:19-21; 9-1-2 and 8-9), and by filing its Motion to Compel

18  Arbitration in response to the filing of the Viva Claims (*see* moving papers). Further, AT&T

19  Mobility has not initiated discovery, amended the complaint to assert its claims against Viva,

20  or taken any other action inconsistent with its right to arbitrate. *See* Supp. S. Kohut Dec. ¶ 4.

21  　　　*(c) Pestano Has Not Suffered Prejudice.*

22  　　　A party seeking a finding of waiver must also prove "prejudice to the party opposing

23  arbitration resulting from the inconsistent acts." *Santana Row Hotel Partners, LP v. Zurich*

24  *Am. Ins. Co.*, 2007 U.S. Dist. LEXIS 96096 at 36. Pestano has not proven prejudice.

25  　　　In the Opposition, Pestano argues, in effect, that prejudice should be found because it

26  was found in *Dillard's*. Opposition at 6:24-7:16. As set forth above, *Dillard's* does not

27  share any facts in common with the facts presented here. *Dillard's,* 430 F.3d 1004.

28  　　　Pestano also argues that waiver should be found because AT&T Mobility is

5

1  attempting to engage in "forum shopping." Opposition at 7:17-8:7. There are no facts to

2  support this claim. AT&T Mobility did not sue Viva, the owner of the Viva Claims, and

3  asserted its right to arbitrate the moment the Viva Claims were asserted. Further, AT&T

4  Mobility offered to arbitrate the entire action. R. Kohut Decl. ¶ 3, S. Kohut Decl. ¶ 3.

5          In order for the Court to find waiver, Pestano must demonstrate that **she** has suffered

6  prejudice. *See Indian Motorcycle Corp. v. Yamin Motorcycle*, 2003 U.S. Dist. LEXIS 25188

7  (N.D. Cal. 2003). Pestano has not and cannot make such a showing. AT&T Mobility did not

8  delay raising the issue of arbitration with either Pestano's counsel or this Court. *See* R.

9  Kohut Decl. ¶ 3; Supp. S. Kohut Decl. ¶¶ 3-4, Exh. 1 at 2:18-19; 4:27-5:2 and 17-18; 6:16-

10  28; 7:1-6; 8:19-21; 9:1-2 and 8-9; Motion to Compel. There is, therefore, no basis for

11  prejudice.

12  **B.    The Arbitration Clause In the 2006 Dealer Agreement Is Not Unconscionable.[3]**

13          Under California law, to prevail on a claim of unconscionability, Viva must prove

14  **both** procedural **and** substantive unconscionability. *See 24 Hour Fitness, Inc. v. Superior*

15  *Court,* 66 Cal. App. 4th 1199, 1212-13 (1998). The Opposition establishes neither.

16      **1.   The 2006 Arbitration Clause is Not Procedurally Unconscionable.**

17          Procedural unconscionability focuses on two factors – "oppression" and "surprise."

18  *See A&M Produce Co. v. FMC Corporation*, 135 Cal. App. 3d 473, 486 (1982). Viva does

19  not attempt to argue either; instead, loosely citing **consumer** and **employment** cases, which

20  are not applicable here, Viva argues that the 2006 Dealer Agreement is a contract of

21  adhesion, which is *per se* procedurally unconscionable. Opposition at 10:6-11:6. Contracts

22  of adhesion are not *per se* procedurally unconscionable or even, "oppressive." *Morris v.*

23  *Redwood Empire Bancorp.,* 128 Cal. App. 4th 1305, 1319-1320 (2005).

24          The situation presented here is on all fours with *Petroleum Sales Inc. v. Valero*

25

26  [3]     Pestano has not argued that the arbitration clause contained in the Original Dealer

27  Agreement is unconscionable. Accordingly, even if the Court were to find the arbitration
provision in the 2006 Dealer Agreement unconscionable, which it should not, the arbitration

28  provision contained in the Original Dealer Agreement would still compel arbitration of the
Second and Fourth Counterclaims. *See* Counterclaims at ¶¶ 35-38 and 43-49.

*Refining Company*, 2006 U.S. Dist. LEXIS 90419 (N.D. Cal. 2006), a case in which this district court did not find procedural unconscionability despite finding contracts of adhesion.

In *Petroleum Sales*, plaintiff Petroleum Sales ("PSI") and defendant Valero Refining Company ("Valero") entered into "standard form dealer agreements with Valero." *Id.* at 2. PSI, like Viva, argued "the dealer agreements were unconscionable and should not be enforced by the Court." *Id.* at 45. The court found that "not all contracts of adhesion are unconscionable" and held the agreements at issue were not procedurally unconscionable. *Id.* at 49-50.

The court's finding was based upon the finding in *Morris*, that "[o]ppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of reasonable market alternatives." *Id.* at 49. *See also Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 771 (1989) (holding that there was no procedural unconscionability because the plaintiff could have obtained an IRA without the contested terms at another financial institution); *accord Kurashige v. Indian Dunes, Inc.*, 200 Cal. App. 3d 606, 613-614 (1988). The court determined that PSI had the option of "walking away from the four stations at issue and seeking more favorable franchise or dealer agreements with another gas company." *Petroleum Sales*, 2006 U.S. Dist. LEXIS 90419 at 49-50. Like PSI, Viva could have become a dealer for Verizon, T-Mobile, Sprint or any of the other wireless providers operating in the Bay Area, as some AT&T Wireless Services Inc. dealers did upon the merger with Cingular. Declaration of Scott Davis ("Davis Decl.") ¶ 4; Declaration of Matthew Woolsey ("Woolsey Decl.") ¶ 4. Viva also could have remained a dealer under the Original Dealer Agreement, as some dealers chose. Davis Decl. ¶ 3; Woolsey Decl. ¶ 3.

Viva does not argue these choices were not available to it. Opposition at 10:6-11:6. Instead it argues, in the most conclusory manner and without any evidentiary support, that such options were not desirable. Opposition at 11:3-5. This district court rejected that argument in *Petroleum Sales*, stating "[t]hese may have been less desirable options, but they were still reasonable market alternatives." *Petroleum Sales*, 2006 U.S. Dist. LEXIS 90419

at 50.  Because there were reasonable market alternatives available to Viva, Viva is precluded

from proving "oppression" and its claim of procedural unconscionability fails.

### 2. The 2006 Arbitration Clause is Not Substantively Unconscionable.

In addition to proving procedural unconscionability, Viva must prove substantive

unconscionability.  "The standard for invalidating a contract or a portion thereof based on

substantive unconscionability is stringent."  *Petroleum Sales*, 2006 U.S. Dist. LEXIS 90419

at 52, citing *American Software Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996).  Viva must

prove an "inequality amounting to fraud [is] so strong and manifest as to *shock the*

*conscience* and confound the judgment of any man of common sense."  *California Grocers*

*Association Inc. v. Bank of America*, 22 Cal. App. 4th 205, 214 (1994) (italics in original).

(a) *Whether the Notice and Assignment Provisions Are Unconscionable is For the*
*Arbitrator to Decide.*

Neither the notice provision nor the assignment provision challenged by Viva are

contained within the 2006 Arbitration Clause.  Miguel Decl. Exh. B at §§ 11.1 and 12.6.

Accordingly, whether or not such clauses are unconscionable is an issue for the arbitrator to

decide and those clauses may not be utilized to determine whether or not the 2006 Arbitration

Clause is substantively unconscionable.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

440; 126 S. Ct. 1204; 163 L. Ed. 2d 1038 (2006).

As set forth by the United State Supreme Court in *Buckeye*, "as a matter of substantive

federal arbitration law, an arbitration provision is severable from the remainder of the

contract."  *Buckeye*, 546 U.S. at 445; 126 S. Ct. at 1209; 163 L. Ed. 2d at 1044.  As the notice

and assignment provisions are not contained in the 2006 Arbitration Clause, if the 2006

Arbitration Clause is severed from the Dealer Agreement, the notice and assignment

provisions remain with the Dealer Agreement.  Miguel Decl. Exh. B.  Accordingly, whether

or not those provisions are substantively unconscionable effects the 2006 Dealer Agreement

as a whole and is a determination for the arbitrator to decide.  *Buckeye*, 546 U.S. at 445; 126

S. Ct. at 1209; 163 L. Ed. 2d at 1044.

8

1          *(b) California Law Enforces Contractual Limitations Provisions of 180 Days.*

2          The 2006 Arbitration Clause requires that "[a]ll claims and disputes covered by this

3   provision must be submitted to arbitration by initiating the arbitration no later than 180 days

4   after the aggrieved party became aware or should have become aware that the act or omission

5   giving rise to the claim or dispute occurred, except for the failure to pay invoices for

6   equipment purchased by Dealer from Company." Miguel Decl. Exh. B §11.3.2.  Viva argues

7   this provision is substantively unconscionable.  Viva also argues the 120 day notice of claim

8   provision, which is not part of the 2006 Arbitration Clause, is a shortened statute of limitation

9   that is substantively unconscionable.[4]  Opposition at 11:16-28.  California case law disagrees.

10         Six month (180 day) shortened statutes of limitation have been consistently upheld by

11  the California Courts.  *See Beeson v. Schloss*, 183 Cal. 618 (1920) (Agent asserting

12  commission claims was held to shortened six month statute of limitations); *West v.*

13  *Henderson*, 227 Cal. App. 3d 1578, 1585-1588 (1991); *Capehart v. Heady*, 206 Cal. App. 2d

14  386, 388-389 (1962); *Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038 (9th Cir.

15  2001) "[T]he weight of California case law strongly indicates that the six-month limitation

16  provision is not substantively unconscionable"); *Perez v. Safety-Kleen Sys.*, 2007 U.S. Dist.

17  LEXIS 48308 at 12 (N.D. Cal. 2007).

18         Likewise, notice of claim requirements are an integral part of California and Federal

19  law.  Such requirements exist in the California Tort Claims Act, California Government

20  Claims Act (Cal. Gov. Code §§ 905, 945.4), the Fair Credit Billing Act (15 U.S.C. § 1666(a))

21  and Fair Debt Collection Practices Act (15 U.S.C. 1692g).

22         Further, "the fact that a contractual limitation period operates upon the claims of one

23  party to the contract and not of the other, does not make the period unreasonable." *Capehart*,

24  206 Cal. App. 2d at 390.  The 180 day limitation provision is, in all respects, enforceable

25  under California law and cannot be held substantively unconscionable.

27  ---

[4]        The only case Viva cites in support of its contentions is *Davis v. O'Melveny &*
28  *Meyers*, 485 F.3d 1066 (9th Cir. 2007).  The holding in *Davis* is specifically restricted to the
employment context and is wholly inapplicable here. *Id.*

9

*(c) Requiring Corporations to Split Fees is Not Substantively Unconscionable.*

Viva also argues that the 2006 Arbitration Clause's fee provision is substantively unconscionable. California law does not support this claim.

The Arbitration Clause provides "[a]rbitrator's fees are split equally between the parties unless the arbitrator rules otherwise at the conclusion of the arbitration or this allocation is prohibited as a matter of law." Miguel Decl. Exh. B § 11.3.6. This language is in accordance with California Code of Civil Procedure section 1284.2, which states "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator . . ." Cal. Code Civ. Proc. §1284.2.

Citing employment and consumer cases and *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), Viva argues that the fee provision is unconscionable because the anticipated cost of arbitration "would deter [Viva] from pursuing various claims, including those stemming from rights granted by California statutes." Oppos. at 13:1-2. First, contrary to Viva's claim, *Nagrampa* specifically states "fee-splitting provision[s] [are] not per se substantively unconscionable under California law." *Nagrampa*, 469 F.3d at 1285. The *Nagrampa* court then specifically refused to decide the issue of whether "the forum selection clause as well as the fee-splitting clause, may contravene California public policy to the extent that they impede the exercise of Nagrampa's unwaivable statutory rights." *Id.* at 1293.

California courts have expressly refused to extend the exceptions set forth in employment and consumer cases to contracts between two commercial entities such as Viva and AT&T Mobility. *See Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 507-508 (2005); *Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 414-15 (2005) ("[T]he Supreme Court recently clarified that case law has not extended the Armendariz cost-shifting rule to common law claims generally. . .").

Finally, even if the Court found that fee-shifting was appropriate, such finding would not affect the arbitrability of Viva's claims; it would merely allow the court to determine whether AT&T Mobility should be responsible for a higher percentage of arbitration fees to

1    allow Viva to pursue the Sixth Counterclaim. *See* Counterclaims; *Boghos,* 36 Cal. 4th at

2    507-508; *Independent Assn.,* 133 Cal. App. 4th at 414-415.

3              *(d) The Confidentiality Agreement is Not Substantively Unconscionable.*

4          Relying exclusively on consumer and employment cases, Viva argues the

5    confidentiality provision contained in the 2006 Arbitration Clause is substantively

6    unconscionable. Opposition at 14:2-19. First, this is not a consumer or employment case.

7    Second, the cases cited by Viva do not state that confidentiality provisions are *per se*

8    substantively unconscionable. For example, in *Davis,* the court found the confidentiality

9    provision was unconscionable "as written" because "it precludes even mention[ing] to anyone

10   "not directly involved in the mediation or arbitration" of "the content of the pleadings, papers,

11   orders, hearings, trials, or awards in the arbitration" or even "the existence of a controversy

12   and the fact that there is a mediation or an arbitration proceeding." Such restrictions would

13   prevent an employee from contacting other employees to assist in litigating (or arbitrating) an

14   employee's case." *Davis,* 485 F.3d at 1078. The confidentiality provision at issue here

15   contains no such restrictions. Miguel Decl. Exh. B at 11.3.1. Indeed, in the present context

16   the confidentiality provision would only preclude the revelation of the "outcome of the case"

17   as the nature of the case is already in the public record. *Id.* Such limitation can hardly be

18   found to "shock the conscious" or work an undue hardship upon Viva.

19              *(e) Each Provision Complained of Can Be Severed.*

20          "An agreement to arbitrate may be enforced if the unconscionable provisions can be

21   severed from the agreement." *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76,

22   101 (2003). Viva argues this well established rule should be overlooked because the 2006

23   Arbitration Clause is "so permeated by substantive unconscionability." Opposition at 15:6-7.

24   This is simply not true. Viva complains of only three provisions that are contained in the

25   2006 Arbitration Clause. *See* Opposition. While none of these provisions is substantively

26   unconscionable, even if they were, severance of these provisions would not effect the "central

27   purpose of the contract." *McManus,* 109 Cal. App. 4th at 101 ("If the illegality is collateral

28   to the main purpose of the contract, and the illegal provision can be extirpated from the

11

1    contract by means of severance or restriction, then such severance and restriction are

2    appropriate." quoting *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th

3    83, 97 (2000)). Accordingly, even if the court finds procedural and substantive

4    unconscionability, the court must sever the unconscionable provisions and compel

5    arbitration. *Id.*

6    **C.    Viva's Claims Arising From the SMF Release and APA Are Arbitrable.**

7    As a threshold matter, Viva's arguments regarding whether there was a "meeting of

8    the minds" in entering into the SMF Release and whether the APA incorporates the 2006

9    Dealer Agreement, are not "gateway issues." Each of these arguments goes to the contracts

10   as a whole and under *Buckeye*, are issues for the arbitrator to decide. *Buckeye*, 546 U.S. at

11   445; 126 S. Ct. at 1209; 163 L. Ed. 2d at 1044.

12   If, however, the Court determines that it should decide these issues, applicable case

13   law requires a finding that the SMF Release and APA are arbitrable.

14   **1.    The Parties Agreed The SMF Release Is Subject to Arbitration.**

15   Section 4(f) of the SMF Release states: "Any disputes related to this 2/1/06 SMF

16   Release between the parties must be resolved under the dispute provisions of the Dealer

17   Agreement." Miguel Decl. Exh. C. This straightforward provision expressly incorporates

18   the arbitration provision of the 2006 Dealer Agreement, which was the only dealer agreement

19   operable at the time the parties entered into the SMF Release. Miguel Decl. Exhs. B and C.

20   Incorporation of arbitration provisions has long been upheld in California. "An agreement

21   need not expressly provide for arbitration, but may do so in a secondary document which is

22   incorporated by reference." *Boys Club of San Fernando Valley v. Fid. & Deposit Co.*, 6 Cal.

23   App. 4th 1266, 1271 (1992); *see also King v. Larsen Realty, Inc.*, 121 Cal. App. 3d 349, 357

24   (1981) (upholding application of arbitration provision contained in the bylaws of a Board of

25   Realtors, in action arising out of membership agreement in which the members agree to abide

26   by the constitution, bylaws, rules and regulations of the local board and the state

27   association.).

28   If there were any doubt whether the arbitration clause applies to the SMF Release, that

12

1  doubt must be resolved in favor of arbitration. "Doubts as to whether an arbitration clause

2  applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.

3  The court should order them to arbitrate unless it is clear that the arbitration clause cannot be

4  interpreted to cover the dispute." *United Transp. Union v. S. Cal. Rapid Transit Dist.*, 7 Cal.

5  App. 4th 804, 808 (1992); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh v. 100 Oak St.*,

6  35 Cal. 3d 312, 323 (1983) ("In this state, as under federal law [citation] doubts concerning

7  the scope of arbitrable issues are to be resolved in favor of arbitration.").

8       Viva claims the SMF Release cannot be enforced because it is unclear whether the

9  arbitration provision in the Original Dealer Agreement or the 2006 Dealer Agreement

10  applies. Opposition at 15:23-16:22. First, this argument ignores that regardless of which

11  provision applies, arbitration was agreed upon. Second, the Original Dealer Agreement was

12  not operable at the time the SMF Release was entered into. *See* Miguel Decl. Exh. B at p. 1

13  and section 12.4. Third, it ignores established law that ambiguities are to be interpreted in

14  favor of arbitrability. "It follows also then that ambiguities in an arbitration clause are to be

15  resolved in favor of arbitration, notwithstanding the California rule that a contract is

16  construed most strongly against the drafter [citation]. 'The . . . Act establishes that, as a

17  matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved

18  in favor of arbitration, whether the problem at hand is the construction of the contract

19  language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Chan v.*

20  *Drexel Burnham Lambert*, 178 Cal. App. 3d 632, 639 (1986), quoting *Moses H. Cone*

21  *Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25; 103 S. Ct. 927; 74 L. Ed. 2d 765

22  (1983). Fourth, it ignores that the arbitration provisions are substantially similar, and to the

23  extent they are different, the clause AT&T Mobility contends applies – the 2006 Arbitration

24  Clause - is more favorable to Viva. Miguel Decl. Exh. A at 10.2 and Exh. B at 11.3. Fifth, if

25  a determination of which arbitration provision applies is necessary, the arbitrator can make

26  that determination. *See Patchett v. Bergamot Station, Ltd.*, 143 Cal. App. 4th 1390, 1397

27  (2006) (the arbitrator has power to interpret the agreement provisions governing arbitral

28  selection); *Service Employees Internat. Union, Local 1000 v. Department of Personnel*

13

1  *Admin.*, 142 Cal. App. 4th 866, 873 (2006) (the parties are bound by the arbitrator's

2  interpretation of the contract in question).

3      Viva contends that the question of whether the Original Dealer Agreement's or the

4  2006 Dealer Agreement's arbitration provision governs negates the parties' clear consent to

5  arbitrate disputes under the SMF Release. In support of the claimed "dispute" Pestano offers

6  a declaration regarding her subjective understanding of the provision. Such "evidence" is

7  irrelevant. "Although the intent of the parties determines the meaning of the contract (Civ.

8  Code, § 1636, 1638), the relevant intent is "objective"--that is, the objective intent as

9  evidenced by the words of the instrument, not a party's subjective intent. [Citation.] … The

10  true intent of a contracting party is irrelevant if it remains unexpressed." *Shaw v. Regents of*

11  *the Univ. of Cal.*, 58 Cal. App. 4th 44, 54-55 (1997).

12      Here, the objective agreement of the parties was to agree to apply the operative 2006

13  Dealer Agreement and 2006 Arbitration Clause to all disputes concerning the SMF Release.

14  Miguel Decl. Exh. B and C. Viva, without legal or factual support, contends that the older

15  arbitration provision governs. While AT&T Mobility disagrees with this legal conclusion, its

16  determination does not affect the agreement of the parties to arbitrate.

17      **2.  The APA is Subject to Arbitration.**

18      Paragraph 13 of the APA provides: "The APA shall be construed and interpreted in

19  conjunction with the [2006] Dealer Agreement and the 2/1/06 SMF Release. To the extent

20  that this APA revises the terms of the Agreement or the 2/1/06 SMF Release, it shall be

21  treated as an amendment to those respective documents." Miguel Decl. Exh. D at section 13.

22  This language constitutes an incorporation of the terms of those agreements into the APA.

23      Relying on *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal.App.3d 632 (1986), Viva

24  asserts this language does not incorporate the terms of the 2006 Dealer Agreement and the

25  SMF Release into the APA. Pestano's reliance on *Chan* is in error. In *Chan*, the Court held

26  "an agreement need not expressly provide for arbitration, but may do so in a secondary

27  document which is incorporated by reference." *Id.* at 639. The court found in the particular

28  documents before it, "the reference did not identify any document or source by title. The

14

1    reference was amorphous, and did not guide the reader to the incorporated document." Id.

2    643. The court further found that in addition to having a clear and unequivocal reference, the

3    "incorporated document be known or easily available to the party to be bound." Id. at 644.

4    It was on these grounds that *Chan* found no agreement to arbitrate.

5        Here, the documents are clearly and specifically referenced. Further, the incorporated

6    documents were not just readily available to, but had each been entered into by Viva. Miguel

7    Decl. Exhs. B-C and D at 4. This is sufficiently clear to incorporate the terms of these

8    documents into the APA. "The contract need not recite that it 'incorporates' another

9    document, so long as it 'guide[s] the reader to the incorporated document.'" *Shaw v. Regents*

10   *of the Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997).

11       Viva further argues that there is a contradiction between the incorporated documents

12   as to what should be the applicable arbitration procedure. Opposition at 17:5-12. Viva is

13   wrong. As set forth above, the SMF Release should itself be governed by the 2006

14   Arbitration Clause because the 2006 Dealer Agreement was the only agreement operative at

15   the time the SMF Release was entered.

16       **3. This Motion Does Not Purport to Affect Pestano's Affirmative Defenses.**

17       This motion is limited to the Viva Claims and does not purport to affect Pestano's

18   affirmative defenses. Consequently, Pestano's argument in section C.3 is moot.

19           **III.    CONCLUSION**

20       For the reasons set forth above and in the moving papers, AT&T Mobility

21   respectfully requests that this Court grant its motion and compel arbitration of each of the

22   Viva Claims.

23

24   DATED: February 21, 2008        KOHUT & KOHUT LLP

25

26                           By: _____

27                               Ronald J. Kohut, Esq.
                                 Sarah K. Kohut, Esq.
                                 Attorneys for Plaintiff
                                 AT&T Mobility II, LLC

28