

**Kohut & Kohut LLP**

Business Trial Attorneys

April 1, 2008

*Via Facsimile Only*

Venkat Balasubramani, Esq.
Balasubramani Law
8426 40th Ave SW
Seattle, WA 98136

      Re:   *AT&T Mobility II, LLC v. Carolyn Pestano*
             Case No. C07-05463 WHA

Dear Venkat:

      This letter is in response to your letter of March 19, 2008 regarding AT&T Mobility II LLC's responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents. For ease of reference, this letter follows the order of topics laid out in your March 19, 2008 letter.

**General Issues**

*References to Documents previously produced by AT&T Mobility.*

      First, contrary to your assertion, in response to both the Request for Production of Documents and in connection with the Initial Disclosures and Supplemental Initial Disclosures, all documents were produced as they were kept in the ordinary course of business. In addition, documents that were produced without Bates Stamps in native form, *i.e.* the electronic form in which they are kept in the ordinary course of business, were also produced with Bates Stamps in TIFF form. E-mails were produced in chronological order for your convenience instead of per user, which arguably could be considered "not in the ordinary course of business," however, we seriously doubt the Court would chide AT&T Mobility for producing the e-mails in this format, which is more convenient for all parties. As the documents were produced in the ordinary course

3554 Round Barn Boulevard, Suite 204 • Santa Rosa, CA 95403 • (707) 573-3100 • (707) 573-3101 fax
600 Anton Boulevard, Suite 1075 • Costa Mesa, CA 92626 •(714) 384-4130 • (714) 384-4131 fax



which are referenced on the privilege log served concurrently with AT&T Mobility's production of documents.

*Objections Based On Statute of Limitations Grounds*

In connection with Requests for Production No. 5, 17 and 21, AT&T Mobility limited its search for responsive documents to those documents dated January 1, 2005 or later, because documents prior to January 1, 2005 are not relevant to this litigation (according to documents authored by Viva, Viva's earliest claims, those under the Original Dealer Agreement, do not arise prior to June 2005) and are archived. Retrieving archived data is extremely expensive and time consuming. If Viva wishes archived data, AT&T Mobility can obtain an estimate to obtain such data and Viva may pay the costs to retrieve such data.

AT&T Mobility is not aware of any responsive documents to Requests for Production Nos. 6, 7, and 10-16, in its possession, custody or control that predate January 1, 2005.

**Specific Issues**

*RFP No. 8*

Request for Production No. 8's use of "Northern California" is over inclusive. Viva's operations were restricted to malls in Northern California and, as Pestano knows, this is the market that was considered in Viva's expansion proposal. Request No. 8, however, is so over inclusive that it encompasses a request to open a store in a non-mall location hundreds of miles from any Viva location. If Request No. 8 is limited to Viva's market, *i.e.* malls in the Northern California market, AT&T Mobility will produce all non-privileged responsive documents, if any exist, in its possession, custody and control subject to the time frame stated in its objections.

*RFP Nos. 9 and 13*

As set forth above, all responsive documents in AT&T Mobility's possession custody and control responsive to Requests for Production Nos. 9 and 13 were produced excepting only, the document recently discovered, which will be produced at the deposition of Carolyn Pestano. As the documents show, the one time payment referenced in the SMF Release was determined from numbers provided by Viva (Bates No. 29254-29257). The future monthly payments were determined by looking at the prior SMF statements, which have also been produced.



With respect to your claim that no documents responsive to Requests for Production No. 9 and 13 could be privileged, this is simply not true. The requests ask for any documents that contain or reflect amounts payable under the SMF Release; drafts of the SMF Release and attorney-client communications reflecting the SMF Release would contain such information. To the extent such documents exist, they are reflected on the privilege log.

*RFP Nos. 10-12*

Requests for Production Nos. 10-12 are unanswerable as framed because they are based upon a misinterpretation of the SMF Release and your client's untrue assertion (which is contradicted by her own SMF calculations and the SMF Release itself) that the monies payable in monthly payments under the SMF Release were "vested" or "owed" when in fact they were unearned future payments. In a good faith effort to resolve this dispute informally, however, AT&T Mobility will supplement its responses to Requests for Production No. 10-12.

*Interrogatory No. 7*

AT&T Mobility will not supplement its response to Interrogatory No. 7.

First, the SMF Release is a settlement agreement. Any discussions with other dealers regarding similar agreements are privileged and confidential settlement discussions that are neither admissible nor subject to discovery.

Second, Interrogatory No. 7 is over inclusive as it is not confined by either market or timeframe.

Third, the information sought is not relevant to the allegations set forth in the Amended Counterclaims. The allegations set forth in the Amended Counterclaims are confined to the terms of the SMF Release entered into between Viva Wireless Inc. and Cingular Wireless II LLC. There are no allegations as to agreements entered into by third parties and Pestano is not asserting claims on behalf of anyone other than Viva Wireless Inc.

As to the hypothetical relevance set forth in your letter of March 19, 2008, such hypotheticals are completely contradicted by the documents produced by both sides in this litigation and the allegations set forth in the Amended Counterclaims. For example, your letter states that the requested identities "may rebut AT&T's characterization that

**KOHUT & KOHUT** LLP

the amounts were disputed," however, the documents bearing Bates No. ATT/PES 29254-29257 clearly show the SMF Release was a product of a dispute raised by your client. Likewise, although your letter states the identities of such dealers may "reveal that AT&T did not have adequate records," AT&T Mobility has produced the records upon which the SMF Release were based, including Viva Wireless Inc's residual statements for one year prior to the date of the SMF Release. Your last hypothetical, that "the terms AT&T imposed on other similarly situated dealers," is not relevant to the terms contained in the SMF Release entered into by Viva Wireless Inc. and Cingular Wireless II LLC. The terms of the SMF Release control the SMF Release, terms of another such agreement with another dealer have no legal effect whatsoever.

Finally, the protective order in place does not adequately address the privacy concerns of the third parties whose information is sought because it does not contain an "Attorneys' Eyes Only Provision." Even if there could be found some credible claim of relevance for the requested information, there is no basis to allow the private information of third parties to be viewed by your client.

\* \* \* \* \* \* \* \* \* \*

If you wish to discuss any of these issues further, we are available for such discussion following the deposition of Carolyn Pestano on April 3, 2008.

Very truly yours,

KOHUT & KOHUT LLP

Sarah K. Kohut