KOHUT
& KOHUT LLP

Business Trial Attorneys

April 15, 2008

The Honorable William H. Alsup
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

    Re:    *AT&T Mobility II, LLC v. Carolyn Pestano:* Case No. C07-05463 WHA
            Opposition to April 8, 2008 Letter to Compel filed by Carolyn Pestano

Dear Judge Alsup:

Defendant and cross-complainant Carolyn Pestano ("Pestano") has filed a letter with this Court dated April 8, 2008 (the "Filing"), seeking to compel plaintiff and cross-defendant AT&T Mobility II LLC ("AT&T Mobility") to produce additional documents and information responsive to the four "Disputed Categories" described below. As explained below, AT&T Mobility has complied with its discovery obligations and Pestano's request should be denied.

In her Filing, Pestano misstates the issues in dispute and unreasonably complicates the Court's task of responding to her Filing by:

- Implying that AT&T Mobility has failed to produce documents, which is belied by her prior admission that AT&T Mobility has produced "thousands of pages of documents."[1]

- Moving to compel the production of an "attachment" that AT&T Mobility has already produced as evidenced by the fact that Pestano attached this "attachment" as page 1 of Exhibit D to her Filing.[2]

- Moving to compel the production of documents to Document Request Nos. 9 and 13, even though - as confirmed by AT&T Mobility's formal responses, production of documents, and April 1, 2008 meet and confer letter - "[a]ll responsive documents in AT&T Mobility's possession, custody or control were produced excepting only those privileged documents which are referenced on the privilege log served concurrently with AT&T Mobility's production of documents."[3]

- Falsely suggesting that AT&T Mobility refused to meet and confer. On April 1, AT&T Mobility sent Pestano a *7-page meet and confer letter* discussing its position on each of the disputed categories, confirming whether or not all responsive documents had been produced with respect to each request for inspection of documents, and inviting Pestano's

---

[1] *See* Pestano's March 19 letter, attached as Exhibit A to the Filing. In fact, AT&T has produced 29,349 pages of documents, to date. *See* Declaration of Sarah K. Kohut ("S. Kohut Decl.") ¶ 3.
[2] *See* S. Kohut Decl. ¶ 4, Filing, Exh. D, p. 1.
[3] *See* S. Kohut Decl. ¶ 5, Exh. 1, p. 3.

3554 Round Barn Boulevard, Suite 204 • Santa Rosa, CA 95403 • (707) 573-3100 • (707) 573-3101 fax
600 Anton Boulevard, Suite 1075 • Costa Mesa, CA 92626 •(714) 384-4130 • (714) 384-4131 fax

The Honorable William Alsup
April 15, 2008

counsel to meet and confer further *in person* on April 3 following Pestano's deposition.[4] Pestano's counsel decided instead to raise the issue of settlement and AT&T Mobility's counsel, Ronald J. Kohut engaged in such discussion with Pestano's counsel and invited Pestano's counsel to meet and confer with Sarah K. Kohut regarding discovery.[5] Pestano further omitted 3 pages of AT&T Mobility's 7-page letter from the Filing in an attempt to persuade the Court of AT&T Mobility's failure to meet and confer and comply with its discovery obligations.[6]

- Suggesting that Pestano was forced to seek the Court's intervention because AT&T Mobility refused to respond to her April 4, letter. AT&T Mobility did not receive that letter until April 7 (the letter was faxed after 5:00 p.m. on a Friday and sent via e-mail on Monday, April 7). Pestano submitted the Filing now before the Court on April 8, less than one business day later.[7] Moreover, such letter expresses Pestano's intent to file a motion to compel regardless of AT&T Mobility's response to such letter.[8]

What is truly at issue between the parties is a single request for production of documents (Request No. 8) and a single interrogatory (Interrogatory No. 7), both of which seek private financial and business information of AT&T Mobility and third parties (Request No. 8) and the identities of persons who entered into confidential settlement discussions and agreements with AT&T Mobility (Interrogatory No. 7). The information sought by Interrogatory No. 7 has no bearing on Pestano's claim that the SMF Release she entered into, which she formerly alleged was valid and enforceable, is subject to rescission.[9] Likewise, the documents requested by Request No. 8 have no relevance to Pestano's unfounded claim of market saturation[10] and are subject to the privacy rights of third parties. For these reasons and those set forth in detail below, Pestano's request for an order to compel should be denied.

### Brief Description of the Case

This action is neither a class nor representative action. It is an action initially brought by AT&T Mobility to recover less than 33% of the monies owed by Pestano's company, Viva Wireless Inc. ("Viva Wireless"), at the time Pestano caused Viva Wireless to terminate its dealer agreement with AT&T Mobility.[11] There is no legitimate dispute that the money sought by AT&T Mobility is owed. Indeed, at deposition, Pestano admitted that not only did Viva Wireless not pay for all of the equipment that it had ordered and received from AT&T Mobility ($170,799.45 of which is still owing), but that it improperly

---

[4] *See* S. Kohut Decl. ¶ 5, Exh. 1, p. 2-4. The entirety of the meet and confer correspondence between counsel is attached as Exhibit "2" to the Declaration of Sarah K. Kohut.
[5] *See* Declaration of Ronald J. Kohut ("R. Kohut Decl.") ¶ 7.
[6] *See* the Filing; S. Kohut Decl. Exh. 1, p. 2-4.
[7] *See* S. Kohut Decl. ¶ 7, Exh. 3. Likewise, Pestano's counsel telephoned AT&T Mobility's counsel, Sarah Kohut on April 7, 2008. Ms. Kohut was not in the office on April 7 and Pestano's counsel did not attempt to reach her via the cellular phone number she had previously given him. *Id.*
[8] *Id.*
[9] *See* Counterclaims, ¶ 30.
[10] Pestano produced no documents in support of this claim in connection with her initial or supplemental initial disclosures. *See* S. Kohut Decl. ¶ 8, Exh. 5.
[11] *See* Complaint and First Amended Complaint. The "amount owed" does not take into account the liquidated damages for which Viva Wireless is liable under the Dealer Agreement for terminating without notice.

The Honorable William Alsup
April 15, 2008

sold such equipment outside the ordinary course of its business in order to generate additional income for "higher priority debts" of Viva Wireless.[12]

Instead of paying its debts to AT&T Mobility, Pestano, as the alleged assignee of Viva Wireless, has now filed unsubstantiated counterclaims, unsupported by the law, the facts, or any of the few documents produced by Viva Wireless in connection with its initial and supplemental initial disclosures, in an effort to persuade AT&T Mobility to accept an unreasonably low settlement amount.[13] In connection with such efforts, Pestano has propounded, and now seeks to compel, overbroad discovery seeking information not relevant to her claims, but private information of AT&T Mobility and third party dealers of AT&T Mobility that Pestano has shown will be used to disrupt AT&T Mobility's relationships with former and current dealers.[14]

AT&T Mobility has complied with the Federal Rules of Civil Procedure and this Court's standing orders. In connection with its Initial Disclosures, Supplemental Initial Disclosures, and responses to requests for production of documents, AT&T Mobility representatives thoroughly searched AT&T Mobility's electronic and paper files (including any files left by former employees). Further, those persons still at AT&T Mobility that had any contact with Viva Wireless or its dealer transactions, thoroughly searched their e-mails, voice mails, working files, and their desks, calendars, diaries, and desktop and laptop computers for documents responsive to the document requests and related to this litigation in any way.[15] As a result, Pestano has received every non-privileged document relevant to this litigation.

## Disputed Categories[16]

### Document Request No. 8

Pestano's motion as to Request No. 8 should be denied. In Request No. 8, Pestano seeks all communications since 2004 between AT&T Mobility and "third parties" regarding opening additional locations in the Northern California Region.[17] Purportedly this relates to Pestano's claim that AT&T Mobility failed to advise her of market saturation when she added shopping mall kiosks in Sacramento, Hayward and San Jose, California at the end of 2006.

Since 2004, there have been 49 third party dealers with locations in the Northern California Region, which encompasses the entire State of California north of Bakersfield, as well as Reno, Nevada.

---

[12] *See* R. Kohut Decl., ¶ 4.
[13] Pestano admitted at deposition that she had not searched approximately 75 boxes of Viva Wireless files and a large number of filing cabinets in storage in Hayward, California in connection with this Action. Pestano later changed her testimony to state she had conducted such a review and still later changed her testimony again to state she had not conducted such a review. A search of this magnitude would not be an event that one might expect to not remember. *See* R. Kohut Decl. ¶ 5.
[14] *See* S. Kohut Decl., Exh. 6, Subpoena to Infinitel.
[15] *See* S. Kohut Decl. ¶ 3.
[16] Attached as Exhibit 7 to the Declaration of Sarah K. Kohut are the complete document inspection demands served by Pestano and AT&T Mobility's responses to such demands.
[17] In its April 1 letter, AT&T Mobility specifically informed Pestano that to the extent it limited its responses to documents dated January 1, 2005 or thereafter, it did so because according to documents authored by Viva, Viva's earliest claims, those under the Original Dealer Agreement, do not arise prior to June 2005. *See* S. Kohut Decl. ¶ 4, Exh. 1, p. 5.

The Honorable William Alsup
April 15, 2008

Many dealers have more than one location. Potentially, each of the 49 dealers could have communicated with AT&T Mobility by letter, phone, e-mail or in person, regarding opening additional locations.

Pestano does not show – or even dare to argue – that all communications between AT&T Mobility and its 49 dealers in the Northern California Region are relevant. Instead, she weakly claims that communications regarding "possible concerns of oversaturation" appear reasonably calculated to lead to the discovery of admissible evidence. Pestano, whose market was limited to kiosks in a few shopping malls and who did not undertake expansion until the end of 2006, cannot possibly show the relevance of any communications (including those regarding oversaturation) that occurred: (1) with any non-shopping mall kiosk dealers, such as retail storefront dealers; (2) before her expansion at the end of 2006; and (3) in locations other than where she expanded (i.e., other than her immediate neighborhoods in Sacramento, Hayward and San Jose).

Pestano also fails to overcome AT&T Mobility's privacy objections asserted on its own behalf and on behalf of its third party dealers. *See e.g., Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 658 (1975) (holding that the confidential financial affairs of third parties are entitled to privacy). Individually owned dealers have privacy rights protected by Article I of the California Constitution. Even corporate dealers have privacy rights. *See Ameri-Medical Corp. v. WCAB*, 42 Cal. App. 4th 1260, 1287-1288 (1996) ("Although corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right, some right to privacy exists. Privacy rights accorded artificial entities are not stagnant, but depend on the circumstances.").

Communications and agreements between AT&T Mobility and its dealers are confidential and proprietary to AT&T Mobility. Communications also contain dealers' confidential, proprietary and private business, strategic and financial information. Many communications between dealers and AT&T Mobility regarding opening additional locations are, in effect, dealer financial proposals. Indeed, in 2006, Pestano submitted to AT&T Mobility on a "confidential" basis, her "Expansion Outline" containing private financial information.[18] Having acknowledged the confidentiality of her own communications with AT&T Mobility, Pestano cannot deny the confidential nature of other dealers' communications or overcome their privacy interests.

## Document Requests No. 9 and 13

With respect to Requests No. 9 and 13, Pestano asks this Court to compel AT&T Mobility to produce documents that it has already produced.

In Requests 9 and 13, Pestano requests documents "containing a calculation of the amounts owed to Viva *at the time the parties entered into* the SMF Release" and "reflecting amounts payable to Viva *under* Section 1 of the SMF Release."[19] These requests are narrow temporally and by subject matter. As to subject matter, they only seek documents "containing a calculation of the amounts owed," and "reflecting amounts payable to Viva." Temporally, the Requests seek documents from the "time the parties entered into the SMF Release" and thereafter – thus, the reference to amounts owed "under" the SMF Release.

---

[18] *See* Notice of Lodgment, Exh. A; S. Kohut Decl. ¶ 11.
[19] *See* S. Kohut Decl. ¶ 5, Exh. 1.

The Honorable William Alsup
April 15, 2008

As set forth in the pages of AT&T Mobility's April 1 letter intentionally omitted from Pestano's Filing, AT&T Mobility has produced all documents in its possession, custody and control responsive to these Requests, excepting only those privileged documents which are referenced on the privilege log served concurrently with AT&T Mobility's production of documents.[20] In connection with its Supplemental Initial Disclosures, for example, AT&T Mobility produced all of the commission and SMF statements relating to Viva Wireless from January 2005 through the time the SMF Release was entered into; the SMF Release, and all e-mails related to the SMF Release.[21] Later, AT&T Mobility found additional documents, including Pestano's calculations of the amounts of SMF she believed were owed to her (which was almost precisely the amount ($192,152.64) calculated by AT&T Mobility and which Viva Wireless received under the SMF Release), that were produced concurrently with AT&T Mobility's responses to the document requests.[22] Finally, at the deposition of Pestano, AT&T Mobility produced a few more e-mails and a compensation update that were found during a third and final sweep of e-mail databases (18 pages total).[23]

The attachment to ATT/PES 29347 that Pestano claims was not produced was produced on April 3 – indeed, it is the first page of Exhibit D to Pestano's motion to compel.[24] The document [and attachment] was not included in the Privilege Log, because the redacted material was non-responsive and contained confidential financial information of AT&T Mobility and third parties.[25] Due to Pestano's complaint, however, the document and attachment have been added to the existing Privilege Log and such "Supplemental Privilege Log" is being produced concurrently with the filing of this opposition.[26]

The "additional documents" Pestano claims should be produced – the research and verification of amounts included in the SMF Release entered into with Viva – were produced. Those research and verification documents are Bates No. ATT/PES 29339 and 29340.[27]

In sum, AT&T Mobility has produced every document that Pestano seeks to compel. Accordingly, her motion to compel should be denied.

**Interrogatory No. 7**

Pestano concedes that Interrogatory No. 7 seeks information relating to confidential settlement agreements between AT&T Mobility and third parties. She argues that a response should be compelled over AT&T Mobility's privacy objection based on cases **not applying California law**, and in one case, not asserting a privacy objection.[28]

---

[20] *See* S. Kohut Decl. ¶ 5, Exh. 1.
[21] *See* S. Kohut Decl. ¶ 12.
[22] *Id.*
[23] *Id.*
[24] *See* the Filing, Exh. D, p. 1; S. Kohut Decl. ¶ 4.
[25] *See* S. Kohut Decl. ¶ 4.
[26] *Id.*
[27] *See* S. Kohut Decl. ¶ 12.
[28] *See City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 303, n.2 (D. Kan. 2000) (applying Rule 26 relevance test (privacy was not asserted as an objection to the discovery) and distinguishing a case applying a privacy test); *Griffin v. Mashariki*, 1997 U.S. Dist. Lexis 19325 (S.D.N.Y. 1997) (applying New York law); and *Bennett v. La Pere*, 112 F.R.D. 136, 139 (D.R.I. 1986) (applying Rhode Island law).

In this case, however, **California law applies** to protect the requested information. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998) ("To the extent privacy is a matter of privilege under state law, federal courts will honor the privilege and protect the responding party from discovery"); Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, §11:992 (2007).

Under California law, confidential settlement agreements are afforded the same heightened privacy protection as bank account and tax information. *Hinshaw, Winkler, Draa, March & Still v. Superior Court*, 51 Cal. App. 4th 233, 241 (1996). "The privacy of settlement is generally understood and accepted in our legal system, which favors settlement and therefore supports attendant needs for confidentiality." *Id.* Accordingly: "Given the private nature of a confidential settlement of a lawsuit, the burden rests on the proponents of discovery of this information … to justify compelling production of this material. **They must do more than show the possibility it may lead to relevant information. Instead, they must show a compelling and opposing state interest.**" *Id.* at 239 (emphasis added).

Pestano argues that discovery should be ordered because the requested information "can be relevant" in that it "may rebut," "may reveal," and "may shed light" on relevant information. This does not suffice. As explained in *Binder v. Superior Court*, 196 Cal. App. 3d 893, 900 (1987): "The following guidelines assist in determining when disclosure of private information may be compelled: 'In an effort to reconcile these sometimes competing public values, it has been adjudged that inquiry into one's private affairs will *not* be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered *might* lead to other, and relevant, evidence. [Citation.]' 'When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information.' [Citations.] 'And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'")

There is not – and Pestano has not shown – a compelling state interest in the disclosure of AT&T Mobility's settlements with *other dealers* of different sizes, income streams and locations, none of which have any bearing on the SMF Release entered into between Viva Wireless Inc. and AT&T Mobility.

## Conclusion

Based upon the foregoing, AT&T Mobility respectfully requests that the Court deny Pestano's motion to compel.

Respectfully submitted,
KOHUT & KOHUT LLP

By: _____/s/_____
Ronald J. Kohut, Esq.
Sarah K. Kohut, Esq.
Attorneys for Plaintiff
AT&T Mobility II, LLC