Balasubramani Law

8426 40th Ave SW
Seattle, WA 98136

phone 206.718.4250
fax 206.260.3966

www.balasubramani.com
venkat@balasubramani.com

April 21, 2008

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

       <u>Re:</u>     <u>AT&T v. Pestano (CV 07-05463 WHA) / Reply in Support of Request to Compel</u>

Dear Judge Alsup:

Ms. Pestano files this brief reply in support of her request to compel responses by AT&T. (Counsel for Pestano was out of the country between April 9 and April 18, 2008 and respectfully requests leave to file this short letter in reply.) As an initial matter, Pestano notes that any arguments made by AT&T regarding Pestano's disclosures and deposition testimony are irrelevant to the instant discovery dispute, which seeks documents which are only in AT&T's possession or control. AT&T raises these arguments in an attempt to cloud the issues.

<u>Meet and Confer</u>: Counsel for Pestano exercised due diligence in attempting to confer with AT&T. AT&T did not respond in writing or otherwise – until April 1 – to the issues raised by Pestano in her March 19 letter. In the meantime, AT&T rescheduled two agreed upon meet and confer times. AT&T advised that it would be available at Ms. Pestano's deposition on April 3 to meet and confer. As the declaration of Ronald Kohut indicates, counsel for AT&T was not available to meet and confer at the deposition. Rather, he "invited [counsel for Pestano to contact Sarah Kohut (AT&T counsel who was not present at the deposition)] . . . to meet and confer regarding discovery."

<u>RFP No. 8</u> / <u>Communications Regarding Additional Locations</u>: Pestano seeks communications regarding additional locations third parties sought to open in the "Northern California" region, the applicable territory specified in the Dealer Agreement. In response, AT&T asserted numerous objections, and advised that AT&T "[would] not produce documents in response to this request as framed." Pestano responded in her initial March 19 letter that it was difficult to tell whether responsive documents exist and were being withheld, or what the scope of available documents were. AT&T advised in its April 1 letter that "if [the request was] limited to Viva's market, i.e., malls in the Northern California market, [AT&T] will produce all non-privileged responsive documents, if any exist . . . ." Pestano's April 4 letter agreed to limit the scope of the request temporally (to January 1, 2004), but did not agree to limit the request to only malls in the Northern California market.

AT&T offers no justification for why Pestano should not be entitled to discover communications regarding additional locations *in the region specified in the applicable dealer agreement*. AT&T appears to argue that concerns regarding oversaturation and viability can only be relevant if any such facts exist with respect to mall locations. There is no basis for this arbitrary limitation. AT&T also argues that the request should be limited to January 1, 2005. Even assuming – as AT&T argues – that the statute of limitations bars any claim which accrued prior to this date, Pestano is entitled to discover a reasonable amount of information that pre-dates it.

<u>RFP Nos. 9 & 13</u> / <u>Compensation Calculations</u>: Pestano sought calculations performed by AT&T regarding (1) compensation owed by AT&T to Viva at the time of the SMF Release and (2) calculations regarding the amounts included in the SMF Release. AT&T initially advised that responsive documents "were produced in connection with [AT&T's] Initial and Supplemental Initial Disclosures." In response to Pestano's letter which pointed out that Pestano did not seek previous compensation statements provided to Viva, but sought calculations AT&T performed in response to concerns raised by Pestano, AT&T advised that it located one additional document which it produced

on April 3. The document produced on April 3 is redacted. At the time AT&T produced the document AT&T did not produce a privilege log, or justify the redactions, thus waiving any privilege. (Thereafter, on April 15, 2008, AT&T produced a privilege log which contains one reference to this document. The document states that the redacted material is "Non-Responsive . . . Financial Information of Third Parties . . . Confidential settlement discussions." None of these are appropriate bases for redacting a document based on privilege.)

The document (ATT/PES 29347-49) reflects calculations performed by AT&T. The document indicates that "the customer base utilized . . . to calculate monthly residual payments was in fact not accurate," and that AT&T "researched the activity of each agent going back to April of 2004 and verified the data that supports the amounts included in each settlement agreement." AT&T argues that the two additional spreadsheets produced on April 3 (attached as **Exhibit A** hereto) are the entirety of the calculations which are sought by Pestano under RFP Nos. 9 and 13. An examination of these documents makes clear that this is not the case.

The first spreadsheet (ATT/PES 29339) purports to be calculations performed by AT&T in determining amounts included in the SMF Release. However, the amount referenced in this document differs from the amount referenced in the Memorandum (ATT/PES 29349) and ultimately included in the SMF Release. Accordingly, there must be another document which contains calculations which generated the amounts referenced in the Memorandum and included in the SMF Release. The second document (ATT/PES 29340), which is the calculation AT&T performed in response to Pestano's queries, contains numbers which are denoted as being "from detail," in several columns. This makes clear that more detailed calculations were performed, and the spreadsheet (ATT/PES 29340) incorporates a summary of those calculations.

**Interrogatory No. 7** / Other Dealers Who Were Parties to SMF Releases:

Interrogatory No. 7 seeks identification of other dealers who entered into agreements similar to the SMF Release. AT&T argues that the sought after information is not relevant and is proprietary and private. However, even if Pestano were merely asserting a simple contract claim based on the SMF Release the sought after information would be relevant. But her amended counterclaims also seek (in the alternative) to unwind the SMF Release on the basis that AT&T withheld material information underlying the transaction. There are clear bases of relevance.

AT&T's own document (ATT/PES 29349) reflects the relevance of the sought after information – this document groups Viva along with other dealers who all asserted compensation complaints. The document reveals that the SMF Release is not a transaction entered into in the context of an isolated dispute. The SMF Release seems to be a company or a region-wide effort to restructure compensation owed to dealers who were AT&T dealers and who continued on with Cingular. As such, even to the extent Pestano is required to make a heightened showing in order to discover the identity of these dealers, Pestano satisfies that standard here.

AT&T's argument that California law precludes discovery of the information is unavailing. (Pestano disagrees that the issue of whether the information is properly discoverable is a matter of state law.) First, corporations have a reduced interest in privacy under California law. Roberts v. Gulf Oil Corp., 147 Cal. App. 3d 770, 796 (Cal. App. 5th Dist. 1983) ("corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right"). Second, Pestano is not seeking the amounts of the settlements or even the settlement agreements themselves, but the identity of the dealers. Any interest in confidentiality is considerably weaker. Finally, even the cases cited by AT&T recognize that settlement-related information is discoverable upon a heightened showing. Pestano makes that showing here.

*****

The broad protective order in place will prevent improper exploitation of the sought after information and protect third party interests, if any. For the reasons set forth herein, Pestano's request to compel should be granted.

Respectfully,

**BALASUBRAMANI LAW**
/s/
Venkat Balasubramani (counsel for Defendant and Counterclaimant Carolyn Pestano)